AUGUSTUS L. CHETLAIN, Administrator,

*v.*

THE REPUBLIC LIFE INSURANCE COMPANY *et al.*

1. CONSIDERATION — *of notes given by stockholder in payment for stock.* Promissory notes given by a stockholder in an incorporated company, for the payment of the first twenty per cent of his subscription to the capital stock, are founded on a sufficient consideration to support them.

2. CORPORATION — *mismanagement of its affairs does not release. stockholder.* The mere mismanagement of the affairs of a corporation will not, even in equity, release a stockholder from his obligation to pay for stock subscribed by him.

3. SAME — *who are owners of franchise, etc.* The stockholders are the owners of the franchise, property, and assets of the company which remain after its debts and liabilities are discharged, notwithstanding its affairs are managed by directors.

4. SAME — *directors are agents only — how far they bind the stockholders.* The directory of an incorporated company are the agents or trustees of the stockholders, and the latter are bound by their acts within the scope of their authority. If their acts are outside of their authority, the stockholders are not bound by them, and they may, no doubt, in a reasonable time, proceed in equity to have the same canceled and their rights protected from injury and loss growing out of the unauthorized act.

5. Directors, like any other trustees, may be restrained from the performance of unauthorized acts; or the stockholders may have them, when performed,

rescinded and canceled. The latter occupy the relation of *cestuis que trust*, and may invoke the aid of equity to protect their interests.

6. SAME — *defense against subscription.* The fact that an incorporated insurance company has purchased a large and expensive building in which to transact its business, and has also purchased the stock of another company, furnishes no defense against the payment of a subscription or other obligation given for stock. If such acts are unauthorized, the remedy is in equity to have them set aside and the consideration paid restored.

7. SAME — *diminishing stock.* Where an incorporated company agrees with its stockholders to issue certificates of stock for the amount of their subscription paid, and cancel the subscription as to the sum not paid, this is not a diminishing of its capital stock, as the remaining stock still belongs to the company, to be disposed of.

8. SAME — *right to buy stock.* There are numerous cases which hold that a corporation may purchase its stock and violate no duty to its stockholders, unless prohibited by its charter.

APPEAL from the Circuit Court of Cook County; the Hon. E. S. WILLIAMS, Judge, presiding.

Messrs. SMALL & MOORE, for the appellant.

Mr. JOHN I. BENNETT and Mr. F. H. KALES, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The Republic Life Insurance Company was incorporated by an act of the General Assembly of this State, and became organized, and entered upon the business for which it was created. Appellant's intestate became a subscriber for 500 shares of $100 each of its capital stock; and as a payment of twenty per cent thereon the company permitted him to execute his notes therefor, drawing interest, payable five years after date, and he executed a deed of trust on property in the city to secure the payment of principal and interest. Walker, in his life-time, paid $400 of interest on this indebtedness. Having died intestate, appellant was duly appointed the administrator of his estate, and, the money not having been paid, appellee filed a bill against the administrator, widow, and heirs of

Walker, to foreclose the deed of trust, and subject the trust property to sale for the payment of this indebtedness. Answers and a cross-bill were filed, and a trial was had on the original bill, answers, replications, exhibits, and proofs. The court found that there was due on the notes, for principal and interest, the sum of $14,357.30, and ordered its payment in ten days, and, in default thereof, that the premises be sold, subject to redemption, and the proceeds of the sale be applied to discharge the decree, and, if not sufficient, that the unpaid balance be paid in due course of administration. From that decree the administrator appeals.

In defense it is urged that the company misappropriated their funds by purchasing the stock, etc., of the National Life Insurance Company; in purchasing a building at a price beyond the wants and means of the company, which impaired the value of Walker's stock; and because the company reduced the amount of its capital stock. This is a statement of the grounds relied on as a defense.

That there was a sufficient consideration to support these notes at law there would not seem to be the slightest doubt. And the question is presented whether the consideration has failed, or whether for any reason it has become inequitable to enforce the payment of this money.

The mere mismanagement of the affairs of a corporation has never been held to release stockholders or others from their obligations to the company. When Walker purchased and became the owner of this stock — whether paid for in money, notes, or otherwise — he became entitled to all the privileges and benefits of a stockholder, and liable to all the burdens the relation imposes. Had there been dividends, he would have been entitled to share in them. Had there been losses imposing liabilities on stockholders, he would have been required to respond to them.

The stockholders are the owners of the franchise, property, and assets of the company which remain after its

debts and liabilities are discharged. For convenience in the transaction of business, and to carry out the purposes of the organization, the charters of such bodies usually authorize the stockholders to choose a certain number from among themselves, as directors, who are empowered to transact its business and exercise its franchises. And in doing so they are agents or trustees for the stockholders, and the latter are bound by their acts within the scope of their authority. When their acts are outside of, and beyond, the scope of their authority, the stockholders are not bound by such acts, and may, no doubt, in a reasonable time, proceed in equity to have the act canceled, and their rights protected from injury and loss growing out of the unauthorized act. If, in this case, the purchase of the house from Farwell was *ultra vires*, or even an abuse of power, any stockholder might have filed his bill to enjoin its purchase, or, if having been purchased without authority, in a reasonable time afterwards, to cancel the purchase and have the consideration which had been paid restored to the company.

Directors, like any other trustees, may be restrained from the performance of unauthorized acts, or to rescind and cancel them when performed. And the stockholders, occupying the relation of *cestuis que trust*, may invoke the aid of equity to thus protect their interests. In this case the house was purchased in Walker's life-time, and more than two and a half years before his death, and some five months after he became a stockholder. Yet he took no steps to avoid the purchase, and have the money and stock paid for it restored to the company. Nor do we see that he ever even objected to this purchase; and we presume he did not, if for no other reason, because it seems to have been a profitable investment, as it was afterwards sold to the National Life Insurance Company for half a million dollars. It is, therefore, contrary to these rules to hold that whilst Walker, as a stockholder, acquiesced in, if he did not approve of, this purchase, and seems, from his non-action,

224    CHETLAIN *v.* REPUBLIC LIFE INS. CO.    [Sept. T.

Opinion of the Court.

to have been willing to take the chances of securing profits thereby, he is to be heard now, or his administrator for his estate, to set this up as a defense to the collection of the purchase money for his stock. This is the scope of what was said in regard to equitable relief in the cases of *Hays* v. *Ottawa, Oswego and Fox River Valley Railroad Company*, 1 Ill. 424, and *Ottawa, Oswego and Fox River Valley Railroad Company* v. *Black*, 79 id. 262. These cases do not, nor were they intended to, hold that a debtor to the company, whether a stockholder or other person, could resort to equity and be discharged from his obligation, because the directors have acted beyond their power or in its abuse.

What has been said in reference to the purchase of the house, and the rules announced in the cases above referred to, fully govern and dispose of the question in reference to the purchase of the stock of the National Life Insurance Company. If it was *ultra vires*, then the act was simply void, and Walker in his life-time, or his administrator after his death, in a reasonable time, if they believed the purchase unauthorized, might have filed a bill to set the whole transaction aside, and restore appellee to its previous condition. This transaction seems to have occurred two months or more before Walker's death, yet he took no such steps, nor has appellant since that time. This, then, forms no defense to the collection of these notes.

As to the last point — that the company reduced their capital stock without the consent of Walker — we do not see that it exists as a matter of fact. The resolution set out in the record only shows that the directors were authorized to issue certificates of paid-up stock to those who had paid twenty per cent on their subscriptions, for an amount equal to the sum thus paid. This in no sense diminished the amount of the capital stock of the company. Where a person had subscribed for, say, ten shares, and had paid $200, and was willing to receive a certificate for two shares of $100 each, and cancel his subscription for the ten shares,

the other eight still belong to the company, and they could sell them to whom they might choose. The subscription for shares, and the payment of twenty per cent thereon, did not vest any title to the shares in the subscriber. That would only be a contract to purchase and pay for the number of shares for which the subscription was made. Until paid for, and the purchaser received his certificate of stock, the title to the shares was still in the company. Hence this was not even an effort to reduce the capital stock of the company by purchasing its stock, or otherwise. But if it had been intended as a purchase of its own shares, there are numerous cases which hold that a corporation may do so and violate no duty to the stockholders, unless prohibited by its charter.[1]

Perceiving no error in the record, the decree of the court below is affirmed.

*Decree affirmed.*

3. Evidence — *where declaration of party as to ownership of property is competent.* Where the grantor in a deed of conveyance remains in possession

---

[1] See *Chicago, Pekin, and Southwestern Railroad Company* v. *President and Trustees of Town of Marseilles,* 84 Ill. 145.

