St. Louis Carriage Manufacturing Company, Appellant, v. Robert Hilbert, Respondent.

### St. Louis Court of Appeals, January 18, 1887.

1. Corporations, Business—Exchange of Goods for Stock—Estoppel.—Business corporations can not exchange their goods for their capital stock so as to reduce or retire the latter; and the corporation may deny the legality of such a contract where it has not received the benefit of the consideration, and where to do so would not work a fraud on the opposite party.

2. Master and Servant—Payment of Debt With Another's Goods.—A servant can not pay his debt with his master's goods; and a vendee who takes the goods with knowledge that the main object of the sale is such payment acquires no title as against the master.

Appeal from the St. Louis Circuit Court, George W. Lubke, Judge.

*Reversed and remanded.*

W. B. Thompson, for the appellant: A servant or agent can not pay his debt with his master's or principal's property. *Bertholf v. Quinlan*, 68 Ill. 297; Story on Agency, sects. 413, 429, 430; *Buckwalter v. Craig*, 55 Mo. 71; *Greenwood v. Burns*, 50 Mo. 52; Wharton on Agents, 210; *Flannigan v. Alexander*, 50, 51; *Wheeler & Wilson v. Givan*, 65 Mo. 89. A corporation can not reduce its stock by exchanging for it its property. *St. Louis Co. v. Robinson*, 82 Mo. 18; *Gill v. Balls*, 72 Mo. —; *Railroad v. Allerton*, 18 Wall. 233; *Corbin v. Greenlesse*, 38 Ohio St. 275; *Johnson v. Laflin*, 6 C. L. J. 124.

B. Schnurmacher, for the respondent: In the absence of a statutory prohibition, the officers of a corporation may invest its funds in the purchase of its own stock; or may take the stock in payment of debts due it from a stockholder; or may take it in exchange for other property owned by the corporation. Such acts are not *ultra vires*. *Taylor v. Exporting Co.*, 6 Ohio, 176; *Bank v. Bruce*, 17 N. Y. 507; *Hartridge v. Rockwell*, Charlton's Reports, 260; *Ex parte Holmes*, 5 Cowan, 426. The surrey having been sold to the defendant by the superintendent of the plaintiff, for part stock and part money, with the tacit consent of the vice-president and the secretary, who were present at the time: even if the act of these officers was not binding on the corporation, because objected to by the president, the corporation could not repudiate their acts and re-take the surrey without first offering to return the defendant his stock and money. *Schultz v. Christman*, 6 Mo. App. 338; *Cahn v. Reid*, 18 Mo. App. 115.

Rombauer, J., delivered the opinion of the court.

The plaintiff is a manufacturing company, incorporated under the general laws of this state, with a capital stock of five thousand dollars, divided into fifty

shares of one hundred dollars par value. March 21, 1885, it issued a certificate for two full paid shares, to one Henry Appel, its superintendent, who immediately thereafter indorsed the same in blank and delivered them to the defendant Hilbert, as security for a loan of two hundred dollars, then made by Appel of Hilbert.

Matters remained in this condition until the twenty-seventh day of July, 1885, except that Appel in the meantime had paid to the defendant some money on account of interest on the loan, placed by the testimony at between ten and twenty-five dollars.

July 27, 1885, the defendant, in pursuance of a previous arrangement with Appel, called at the plaintiff's storerooms, and bought from Appel, who purported to act for the plaintiff, a surrey carriage of the value of two hundred and twenty-five dollars, and paid for said surrey by turning over to Appel the two shares of stock held as security for Appel's debt, and twenty-five dollars in cash. Thereupon the defendant removed said surrey from the plaintiff's storerooms, and made immediate efforts to re-sell it, but had not done so prior to July 30, 1885, when the present action was instituted by the plaintiff corporation, to recover the surrey by replevin.

Appel, upon selling the surrey, caused the plaintiff's book-keeper to charge him with two hundred and twenty-five dollars, upon the plaintiff's books, and afterwards, and prior to the institution of the suit, he offered to turn over to the plaintiff's president the two shares of stock, but not the money, which, in the meanwhile, he had spent.

It was also in evidence that prior to the institution of the suit, the plaintiff's president demanded of Appel, and of the defendant, payment for this surrey in cash, and that the two shares of stock and the twenty-five dollars in cash never came into possession of the company, unless Appel's possession amounted to such possession.

This was substantially all the testimony. The jury

found a verdict for the defendant, and the complaint of the appellant is, that the court gave erroneous instructions to the jury.

Two propositions of law are presented by these instructions: (1) Whether in order to avoid the sale, on the ground that it was made by the agent Appel to pay his private debt, it was incumbent upon the plaintiff to show that such debt was the sole consideration of the sale ; and (2), assuming that the sale was made on behalf of the company, and valid in other respects, whether it became invalidated by the fact, that its consideration was stock of the corporation, which it received in exchange of its wares.

On the first proposition the plaintiff requested the court to charge the jury as follows:

" The court instructs the jury that if they find from the evidence that the defendant and Henry Appel, an employe of the plaintiff, took the surrey in controversy from the premises of the plaintiff for the purpose of paying the private debt of Appel to the defendant, and without the knowledge or consent of the plaintiff, then the jury will find for the plaintiff."

" The jury is instructed that a corporation is bound by the acts of its agents duly authorized, and if the jury find from the evidence that the defendant knew that Henry Appel had no authority to sell or deliver the surrey in question, belonging to said corporation, for the payment of an indebtedness due and owing by said Appel to the defendant, then the jury will find for the plaintiff."

The court refused to give these instructions, but gave them in a modified form by inserting in the first before the words, " for the purpose " the word " solely," and by adding to the second " provided the jury, from the evidence, find the facts called for by the preceding instruction, number one, given for the plaintiff."

This modification, under the facts of the case, was unwarranted, and is prejudicial error. The view of the

testimony most favorable to the defendant, leaves no doubt on the subject, that the main, if not the only, object of the whole transaction was the payment of Appel's debt to the defendant, which formed eight-ninths of the entire consideration. It would be a dangerous doctrine, which would permit an agent to pay his debts with the goods of his principal, provided he takes care to stipulate for some nominal benefit to his principal as an incident to the transaction. That a transaction of that character is not within the implied authority of the agent is elementary. Story on Agency, 413, 429, 430; *Benny v. Rhodes*, 18 Mo. 147; *Wheeler v. Givan*, 65 Mo. 89, 93.

On the second proposition the defendant requested the court to give, and the court gave, the following instruction:

"If the jury find from the evidence that Henry Appel, on or about the twenty-seventh day of July, 1885, was the general superintendent of the plaintiff, and as a part of his duties, was engaged in selling the wares of the plaintiff and collecting therefor, and that, prior to the institution of this suit, said Appel sold to the defendant the surrey in question, and as such superintendent received from the defendant two shares of the capital stock of the plaintiff corporation and twenty-five dollars in payment for said surrey, and thereupon delivered the same to the defendant, then your verdict should be for the defendant; provided the jury, from the evidence, also believe and find that the reasonable value of said surrey was not more than the market value of said shares and twenty-five dollars in money, and that the president and other officers of the company were informed of the sale and delivery of said surrey before the commencement of this suit, and were also informed of the manner in which the defendant had paid for the same, and that the plaintiff company has not disclaimed or offered to return to the defendant said shares and also said twenty-five dollars."

· This instruction assumes that the stock might lawfully have been taken by Appel for the company in payment of the surrey, provided it was taken at its market value.   The question what the market value of the stock was, could only be material if the corporation had the legal power to take its own stock, and thus exchange its stock for its wares, and re-issue it or retire it as it saw fit.   A corporation in this state has no such power.   It is not simply a question between the state and the corporation, or between the corporation and its creditors, as the defendant assumes, but a question affecting the validity of the contract itself.

Section 937, of the Revised Statutes, prescribes in what manner manufacturing or business corporations may diminish their capital stock, and the method therein prescribed is a limitation of the power to diminish it in any other way.   Even outside of the statute, the better reason is, that a trading corporation should not be permitted to traffic in its own stock, where by so doing it decreases the security which all parties dealing with it have in the individual liability of stockholders, for the unpaid part of the stock.   It affirmatively appears in this case that the two shares of stock herein above mentioned were not full paid.

The rule as above stated was considered the better rule and reason in *Coppin v. Greenless* (38 Ohio St. 275, 279), although the final decision of the case rests on the ground that the constitution of the state of Ohio creates a double liability on the part of stockholders, which might be annulled by legalizing a traffic by the corporation in its own stock.

We are aware that the doctrine of *ultra vires* has been greatly relaxed in recent times.   *Bradley v. Ballard*, 55 Ill. 413, 414.   This, however, is almost exclusively in regard to executed contracts, and in cases where the adherence to the former rigid rule would work a fraud on persons dealing with the corporation.   If it clearly appeared that the corporation had in this case

received the benefit of the otherwise illegal transaction, it might well be held estopped from setting up its illegality. Such, however, is not the case. As far as the record shows, the servant, Appel, who delivered the company's property in payment of his private debt, still holds the stock, and has spent the money, and the corporation has received neither stock nor money.

Nor can we see in the record any evidence, which justified the court in submitting the question of ratification to the jury. The power to ratify the contract is clearly vested by the by-laws in the president. The demand of payment from Appel, and from the defendant by the president, is evidence of the fact that the corporation was willing to sell the surrey for two hundred and twenty-five dollars, in cash, to either of them, and not that it was willing to take two hundred dollars in stock and twenty-five dollars in cash, from either.

As the evidence failed to show that the stock ever came to the hands of the plaintiff, a tender of it to the defendant, prior to the institution of the suit, was neither required nor feasible.

The judgment is reversed and the cause remanded. All the judges concur.