E. J. EGGMANN, Assignee of PARAGON AWNING AND
MANUFACTURING COMPANY, Respondent, v.
D. J. BLANKE, Appellant.

**St. Louis Court of Appeals, April 1, 1890.**

**Corporations.** Law of the state of Illinois considered and *held* that,
under it, a corporation has the right to acquire shares of its own
capital stock.

*Appeal from the St. Louis City Circuit Court.*—HON.
JAMES E. WITHROW, Judge.

AFFIRMED.

*S. S. Merrill,* for the appellant.

(1) At the date of these notes and the issue of the
five hundred shares to the defendant all the stock of the
corporation belonged to the subscribers in the articles
of incorporation, and such issue was an over-issue of
stock and therefore void. The subscription makes one
a stockholder, and it is not necessary to have a certifi-
cate. *Schaeffer v. H. I. Co.,* 46 Mo. 248; 1 Waterman
on Corp. 168, sec. 48; Cook on Stock & Stockh. [1 Ed.]
12, sec. 10; *Haskell v. Sells,* 14 Mo. App. 91. More-
over an over-issue of stock is void. Cook on Stock &
Stockh. [1 Ed.] sec. 291; *Scovill v. Thayer,* 105 U. S.
143; *H. I. Co. v. Kamper,* 73 Ala. 325; *Clark v. Turner,*
73 Ga. 1; *Lathrop v. Kneeland,* 46 Barb. 432; *Page v.
Austin,* 10 Can. Sup. Ct. 132; *People v. Sterling B. C.
M. Co.,* 82 Ill. 457; *Works v. Mfg. Co.,* 139 Mass. 5;
*Bank v. Railroad,* 13 N. Y. 599; *Railroad v. Schuyler,*
34 N. Y. 30. (2) The only claim, that the company
had any stock at that time, is the contract (Exhibit D)
of February 14, 1887, made by Smith as president of

both companies, and attested by the secretaries of both, selling the assets of one for stock in the other, part of which stock the new company could sell for its own benefit.    Neither the president of a company nor its secretary has power, as such, to make such a contract for the company.    *Hyde v. Larkin*, 35 Mo. App. 366; *Bacon v. I. Co.*, 31 Miss. 116; 1 Waterman on Corp. [1 Ed.] sec. 126.    The contract, moreover, could not bind the corporation, when it was made, since the corporation was not then in existence.    Nor could the corporation ratify the contract, since the contract was void and not voidable.    *Ashbury v. Riche*, L. R. 7 H. L. 653; *Taymouth v. Koehler*, 35 Mich. 22; 2 Waterman Corp. [1 Ed.] sec. 269; 1 Story Cont. [5 Ed.] sec. 244; *National T. Co. v. Miller*, 33 N. J. Eq. 155; *Thomas v. Railroad*, 101 U. S. 71; *Downing v. Railroad*, 40 N. H. 230; *In re London N. J. Co.*, L. R. 4 Ch. App. 682; *Alexander v. Nelson*, 42 Ala. 462; *McCullough v. Moss*, 5 Denio, 567; *Carnes v. Polk*, 4 Coldw. 87.    In such a case there can be no estoppel. *Works v. Mfg. Co.*, 139 Mass. 5; *In re Comstock*, 3 Sawy. 218; *Scovill v. Thayer*, 105 U. S. 143; *Langan v. Sankey*, 55 Iowa, 52; *Martin v. Zellerbach*, 38 Cal. 300; *Mattox v. Hightshue*, 39 Ind. 95.

*H. D. Wood*, for the respondent.

The contention that the stock for which the notes sued upon were given is over-issued stock is erroneous, both as a matter of law and as a matter of fact.    The stubs in the stock book show that of the fifty thousand shares authorized capital only twenty thousand, six hundred and fifty-two shares have been issued.    There could be no over-issued stock until the whole fifty thousand shares were issued.    The title to unissued stock remains in the company.    *Chetlain v. Ins. Co.*, 86 Ill. 225, 220.    This is an Illinois corporation.    In

Illinois a corporation may own its own stock and violate no duty to stockholders. *Chetlain v. Ins. Co.,* 86 Ill. 225, 220. The contract to purchase the stock inured to the benefit of the company after it completed its organization. *Griswolk v. Trustees,* 26 Ill. 41.

BRIGGS, J., delivered the opinion of the court.

The plaintiff is the assignee of the Paragon Awning and Manufacturing Company, a business corporation organized under the laws of the state of Illinois, and as such assignee he instituted this action against the defendant on several promissory notes, executed by the defendant, and made payable to that company. In the body of each note is the following statement: "The same being a payment of five per cent. on my purchase of five hundred shares of stock of the Paragon Awning and Manufacturing Company, which is held by them as collateral security for the payment of this note."

The defense was that the stock issued to the defendant by the awning company was an over-issue of its capital stock, and that, for this reason, the notes given by him in part payment thereof were without consideration. The cause was submitted to the court, and judgment was entered against defendant for the full amount of the notes. From this judgment the defendant has prosecuted an appeal.

There is no dispute about the facts, and they may be stated as follows : On the twenty-second day of January, 1887, the defendant, Henry W. Smith, E. C. Newkirk, and others were stockholders in the Paragon Awning Company, another Illinois corporation. Charles L. and H. S. LaBarge were the owners of certain patents or inventions, which, at that date, were supposed to be very valuable. An agreement was entered into between Charles L. LaBarge on the one side, and Henry W. Smith and other stockholders of the last-named company on the other, in which it was agreed to

form a new corporation, to be known as the Paragon Awning and Manufacturing Company, with an authorized capital stock of fifty thousand shares of the par value of ten dollars each.   This stock was to be divided as follows : Ten thousand shares were to be subscribed for by Charles L. and H. S. LaBarge, to be paid for by an assignment of their patents to the new corporation, and the remaining shares were to be subscribed for by Henry W. Smith and E. C. Newkirk.   The shares so subscribed by Smith and Newkirk were to be paid for by transferring to the proposed company all the assets of the old company, and the shares so subscribed were to be divided among the stockholders of the old corporation in the proportion in which they held the shares of the old company ; except ten thousand shares, which were to be held by Smith as trustee, and to be sold under the direction of the directors of the new company for the purpose of creating a working capital.   The stock of the new company was subscribed pursuant to this plan, and, on the twelfth day of February, 1887, the secretary of state of Illinois issued a certificate of incorporation under the name of the "Paragon Awning and Manufacturing Company."   Prior to the incorporation of the new company, but in contemplation thereof, to-wit, on the eighth day of February, 1887, the defendant together with various other parties signed an agreement, by which they agreed to purchase of the new company the entire ten thousand shares, set apart as a working capital, at one dollar per share. The defendant subscribed for five hundred shares.   On the twelfth day of February, the defendant was elected a director of the new company.   On the fourteenth day of February the sale of the assets of the old company was ratified by its stockholders.   On the sixteenth day of February, the defendant was elected vice-president of the new corporation.   On the eighteenth day of February the defendant executed the note sued on, and

on the twenty-fourth day of March the sale of the ten thousand shares of stock at one dollar per share was ratified by the Paragon Awning and Manufacturing Company. On the sixth day of May, 1887, the defendant was present at a directors' meeting and a statement of the delinquent purchasers of this trust stock was read, and he urged the enforcement of the subscriptions. In addition to this, the defendant issued a prospectus, in which he set forth the bright prospects of the new corporation, stating, among other things, that ten thousand shares of capital stock had been reserved by the company, and would be sold at one dollar per share, in order to raise funds to prosecute the business, and that he had purchased five hundred shares of this stock.

The objection made by defendant's counsel, that the stock issued to defendant was an over-issue by the Paragon Awning and Manufacturing Company, is, in our opinion, untenable. The determination of this question, however, does not necessarily fix the defendant's liability, but it is made to depend upon the validity or legality of the agreements leading up to the incorporation of the company. It is true, as claimed by defendant, that the law of Illinois requires the entire capital stock of a proposed corporation to be subscribed, but we are of the opinion that this law was strictly complied with in the incorporation of the Paragon Awning and Manufacturing Company. The organization of this corporation was, in effect, a re-organization of the Paragon Awning Company, and the object was to increase the capital stock, and secure control of the inventions belonging to Charles L. and H. S. LaBarge. To accomplish this an agreement was entered into by LaBarge on the one side, and Henry W. Smith and E. C. Newkirk, representing the old corporation, on the other, by which LaBarge was to subscribe for ten thousand shares of the new corporation, and Smith and Newkirk were to subscribe for the remainder, to-wit,

forty thousand shares to be held for the benefit. of the stockholders of the old company.   LaBarge was to pay for his stock by transferring to the company the patents or inventions, and Smith and Newkirk were to pay for the trust stock by transferring to the new company all the assets of the old.   But, for the purpose of securing a fund to prosecute the business of the proposed corporation, it was agreed that ten thousand shares of the stock, which was subscribed by Smith for the benefit of the stockholders, should be turned over to the new company to. be sold by it for the benefit of all parties concerned.   The practical effect of this arrangement was to donate to the new corporation ten thousand shares of its own stock, but, as we have shown, the stock had been *bona fide* subscribed, and paid for in a manner not subject to challenge by this defendant. The stock purchased by defendant was a portion of the ten thousand shares, and this disposes of his contention that the stock delivered to him was, as a matter of fact, an over-issue.

However, as before stated, the defendant's liability does not depend solely upon this question, but the question still remains whether such an agreement, when ratified by the stockholders of the old company and carried out by delivery of the stock to the new company, was repugnant to the laws of the state of Illinois. Our examination of the Illinois decisions has led us to the opinion that this contract or arrangement was not *ultra vires* under the law of that state.   There are numerous cases of the supreme court of that state, which hold that a corporation may purchase its own stock, and violate no duty to its own stockholders. *Chetlain v. Ins. Co.*, 86 Ill. 220; *Chicago, etc., Railroad Co. v. President*, 84 Ill. 145.   In the *Chetlain case* the court held that if A. subscribed for ten shares of the capital stock of a corporation, and, having paid two hundred dollars, was willing to receive a certificate

for two shares of one hundred dollars each and cancel his subscription for the ten shares, this could be done, and that the other eight shares would belong to the company, and that it had a right to sell them to whom it pleased. The doctrine of this case would indicate that the agreement to donate the ten thousand shares was valid, and, when ratified by the stockholders of the old company, it vested in the new corporation the title to the stock, and the company had the right to sell it to whom it pleased.

Prior to the incorporation of the company, but, in contemplation of it, and for the purpose of carrying out the plan devised for the sale of the ten thousand shares, the defendant and others signed a paper in which they agreed to purchase the entire ten thousand shares at the price of one dollar per share. This agreement to purchase inured to the benefit of the new company after it completed its organization. *Griswolk v. Trustees*, 26 Ill. 41. The defendant agreed to buy five hundred of the shares, and this contract of purchase was subsequently carried out by him by the execution of the notes sued on.

There is no principle of law known to us, which would release the defendant from his liability to pay these notes. No question of fraud or misrepresentation is urged; in fact the record shows that the plan of incorporation, and especially the plan adopted for the sale of the stock was devised by the defendant himself. He was an officer and director of the corporation and took an active part in the management of its business, and he is, therefore, in no position to claim that he was over-reached or in any way deceived in the purchase of the stock or in the execution of the notes.

As we find no error in the record, the judgment of the circuit court will be affirmed. All the judges concurring, it is so ordered.