C. N. BOLEY, Plaintiff in Error, v. SONORA DEVELOPMENT COMPANY, Defendant in Error.

**Kansas City Court of Appeals, June 24, 1907.**

CORPORATIONS: Purchasing Stock: Agreement to Buy Back. The effect of an agreement between a corporation and a purchaser of its stock was that at the end of a certain time the corporation, at the election of the purchaser, would take the stock back and return him his money. *Held*, the contract was unlawful and cannot be enforced, since creditors and stockholders would be injured thereby.

Error to Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

AFFIRMED.

*Marley & Swearingen* for plaintiff in error.

(1) The defendant's demurrer to the petition should have been overruled. Goodland v. Bank, 74 Mo. App. 372; Lysaght v. Association, 55 Mo. App. 538; North Hampton County's Appeal, 6 Casey 305. (2) Only the existing creditors of an insolvent corporation could take advantage of such a contract. Shields v. Hobart, 172 Mo. 514; Tube Works v. Machine Co., 118 Mo. 365; Hall v. Goodnight, 138 Mo. 576.

*Daniel B. Holmes* and *Henry C. Page* for defendant in error.

(1) The contract set up in the petition is illegal, null and void and cannot be made the basis of an action

against the corporation.   St. Louis Rawhide Co. v. Hill, 72 Mo. App. 148.

ELLISON, J.—The plaintiff's action is for five hundred dollars. There was a demurrer to the petition on the ground that it did not state a cause of action. The trial court sustained the demurrer. The plaintiff refused to plead further and appealed. The petition alleged: "That on or about the fifteenth day of November, 1902, the said defendant received from this plaintiff the sum of five hundred dollars ($500.00) in payment for purchase by plaintiff of defendant of one thousand (1,000) shares of stock of the defendant, which said shares of stock were evidenced by certificate numbered 369, issued by said defendant. As part of the same transaction and as an inducement thereto, the defendant did issue to this plaintiff its agreement numbered 94, wherein it is agreed that the said transaction might be regarded as a loan from the plaintiff herein to the defendant on the following terms, to-wit: "That the said Sonora Development Company acknowledged itself to be conditionally indebted to this plaintiff, C. N. Boley, in the sum of five hundred dollars ($500.00), and did agree, among other things, that at the end of two (2) years from the said fifteenth day of November, 1902, it would pay to this plaintiff the said sum of five hundred dollars ($500.00) with interest thereon at the rate of six (6) per cent per annum, payable semi-annually, upon the following conditions, to-wit: that this plaintiff, within twenty (20) days after the fifteenth day of November, 1904, should give written notice to the secretary of said company at Kansas City, Missouri, to the effect that this plaintiff had exercised and did exercise the said option and should elect to treat the said transaction as a loan and should, within twenty (20) days from the 15th day of November, 1904, deliver to the said secretary the said stock certificate of defendant herein-

before described, duly assigned in blank on the back thereof." The petition then alleges that within the time agreed upon he gave written notice to defendant that he had exercised the option to treat the transaction as a loan of five hundred dollars to defendant and that he delivered back the certificate of stock assigned in blank, but that defendant refused to pay him the said sum of five hundred dollars.

The effect of the contract is that the defendant sold to plaintiff certain shares of its stock for five hundred dollars which were duly issued and delivered to him. The effect of the further agreement was that defendant would, upon plaintiff's election to sell, buy the stock back from him at the price he paid. The result being that the directors of the defendant company have released the plaintiff from his responsibility as a stockholder, and whether this is attempted by what might, in some sense, be termed a rescission or as a surrender of the stock it cannot be lawfully done. And it is not alone creditors who may complain as intimated by plaintiff, but it is equally a fraud upon other stockholders and cannot be done without their consent. The Supreme Court in Gill v. Balis, 72 Mo. 435, quoted with approval the following: "Their (the directors') duties were to conduct the affairs to the furtherance of the ends for which the company was created. They had no right to give away any of its funds, or to deprive it of any of its means, to accomplish the full purpose for which it was chartered. The creditors were not the only persons who had interest at stake. The stockholders who had paid their subscriptions or bought their stock . . . were at least equally interested. So in the case of Spackman v. Evans, L. R., 3 H. L. Cas., 186, where a kindred question came before the court, Lord Cranworth remarked that a stockholder might well object to relieving other stockholders and say, 'I became a stockholder, relying on the names of those who were engaged with

me in partnership. I delegated the management to certain directors, with defined powers and duties. It was part of the stipulation of the deed of partnership that none of my fellow shareholders should quit the partnership except by substituting in his place some other person approved by the directors. This was, I thought, sufficient security to me, that in the event of my being called on by a creditor, who, having recovered judgment against the company, should proceed to enforce payment against me. I had solvent partners, from whom I might obtain contribution, and now I find that, without authority, you, the directors, have taken on yourselves to enable several of my partners to withdraw from the partnership, a proceeding which I never authorized.' It follows, we think, from the above authority, that the resolution of the board of directors of February 17, 1871, whether to be considered with reference to its bearing on the creditors of the company or its stockholders, or on both, cannot afford the protection which the defendants claim under it."

And in Banking Co. v. Mfg. Co., 168 Mo. 645, 647, that court said: "If the corporation or stockholders could be allowed, as soon as the incorporation was completed, to sell out their stock to the company and thereby escape liability for unpaid subscriptions or, in case the stock was fully paid, to receive back from the company the amount paid in and to return back to the company the stock subscribed, . . . the consequence would not only be disastrous to creditors but would also be fatal to the corporations themselves inasmuch no one would deal with corporations under such conditions. The statutes afford ample, honest and sufficient methods for reducing the stock of an incorporated company and the rights of creditors as all the interests of such companies are fully protected. Such a proceeding as was resorted to in this case is wholly without legal authority or protection. . . . The attempted surren-

der and cancellation of the subscription and the purchase of such stock by the company as treasury stock is void and of no more effect than if no such thing had ever been attempted." And so the same was said in Insurance Co. v. Floyd, 74 Mo. 291. In St. Louis Rawhide Co. v. Hill, 72 Mo. App. 148, the St. Louis Court of Appeals said that, "To permit the corporation to buy in its own stock would permit it to take a corresponding amount of assets and distribute them among the stockholders and thus reduce its capital." [See also VanCleve v. Berkey, 143 Mo. 109, and Shields v. Hobart, 172 Mo. 518.]

We regard the ruling of the trial court as supported by the law and affirm the judgment. All concur.