INTER-STATE GROCER COMPANY, Appellant, v. H. C. TAYLOR, Respondent.

**Springfield Court of Appeals, June 25, 1918.**

CORPORATIONS: Stock Subscriptions: Collateral Agreement to Repurchase. Agreement of a business corporation to repurchase stock subscribed for at option of owner is *ultra-vires* and not enforceable.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker*, Judge.

REVERSED AND REMANDED (*with directions.*)

*W. E. Edmonds* and *H. S. Shaw* for appellant.

*J. L. Downing* for respondent.

STURGIS, P. J.—This suit is in two counts, the first being for $107.26 for merchandise sold to the defendant and the second for $100 balance due on defendant's subscription for four shares of the capitol stock of the plaintiff corporation. There is no dispute as to the first count except that the defendant claims he owes only $100 for merchandise. As to the second count defendant not only denies that he is obligated to pay the unpaid balance of $100 on the subscription for stock but claims that plaintiff, under a contract made at the time he subscribed for the stock, owes him $100 under its agreement to take the stock back at any time and return the purchase money paid thereon.

The whole controversy therefore is whether the plaintiff can compel defendant to pay the balance due on the stock subscribed for by him or whether defendant can compel plaintiff to repurchase or take back such stock from him and pay him, by way of credit on the merchandise account, the amount he has al-

ready paid on such stock. The defendant had judg-ment in the trial court and the plaintiff appeals.

The plaintiff is a corporation formed under the laws of Illinois and located at Cairo in that State. It was organized to engage in the wholesale grocery business. Its stockholders are, for the most part at least, retail grocer merchants. The corporation was formed on the cooperative plan, each retail merchant taking and being limited to four shares of the capital stock of the par value of $50 each. These retail mer-chants are the stockholders of the company and also its chief customers. As finally arranged the corpora-tion was organized under the present name with $50,000 capital stock. The defendant is a retail mer-chant and subscribed for four shares of the capital stock at $50 per share. He paid one-half or $100 cash thereon and the stock was issued to him and kept by him for about one year. Becoming dissatisfied he then sent to the plaintiff his certificate of stock and demanded a return of, or credit on his account for, the $100 paid.

The defendant's contention must fail for several reasons. In the first place his own evidence does not establish the contract for which he contends, to-wit, that the plaintiff agreed at the time he subscribed for these four shares of stock to repurchase same from him at any time he chose and pay him back the amount paid thereon. The defendant's evidence is that when the promoter of the company (whose authority in this respect is not shown) solicited him to subscribe for this stock the following occurred: "His proposition was to sell those shares at $50 in the company he called it, and I asked him if I bought the shares and became dissatisfied with them, how I should dispose of them. . . . He said it was a very easy matter; if I became dissatisfied and wanted to dispose of it *they could dis-pose of the stock most any time* and for me to return the certificate of stock to the company and if I had paid $100 or $200 or whatever sum I might have paid I could take that out in groceries or whatever they had; but that they would sell the stock and place it to my

credit; further stating that I would owe nothing and we would be square. I bought groceries from them after they organized for over twelve months along occasionally, and their prices began to get higher and they wanted more than any other house where I could purchase goods so I returned my certificate of stock to the manager, W. W. Wright, November 3, 1913; he advised me through the mail that he would place the stock and place the credit with $100, the amount I owed at the time, for groceries. He further stated that he would sell my certificates of stock to another party and place it to my credit which would put the books on a balance. I do not know whether he ever sold my stock. He did not return it to me.''

This evidence is far short of proving the contract contended for. It merely shows that this promoter gave it as his judgment, for it can be nothing else, that this stock would always be salable at par, and that the management would "most any time" be able to sell this stock to some one else and would do so for him and place same at his credit.

In the next place the contract which the defendant is seeking to enforce is *ultra vires* and not enforceable. It is the law generally, and certainly so in this State, that a business corporation cannot make a valid agreement on the sale of and subscription to its original capital stock to repurchase such stock at any time such original purchaser desires to have it do so. It was held in St. Louis Rawhide Co. v. Hill, 72 Mo. App. 142, 148, that unless such right is conferred by the corporate charter the weight of authority both at common law and in this country is that the corporation cannot make a valid contract to repurchase its own shares of stock. [See 1 Cook on Corporations, section 309.] Such also is the holding in Boley v. Sonoro Development Co., 126 Mo. App. 116, 103 S. W. 975; and in St. Louis Carriage Mfg. Co. v. Hilbert, 24 Mo. App. 338. Our Supreme Court in Chrisman-Sawyer Banking Co. v. Independence Wool Mfg. Co., 168 Mo. 634, 645, 68 S. W. 1026, said: "So that the law is now well settled

in Missouri, as well as by the weight of authority in America, that unpaid stock subscriptions constitute an asset of an incorporated company, which all creditors, without regard to when their debts were contracted, have a right to look to and which cannot be extinguished, released, given away, wiped out or impaired by any act of the corporation or the stockholders to the injury of the creditor except by his consent. . . . If the incorporators or stockholders could be allowed, as soon as the incorporation was completed, to sell out their stock to the company, and thereby escape liability for unpaid subscriptions, or in case the stock was fully paid, to receive back from the company the amount paid in, and turn back to the company the stock subscribed, the doors for great frauds upon the creditors would be thrown wide open, and the consequences would not only be disastrous to creditors, but would also be fatal to the corporations themselves, inasmuch as no one would deal with corporations under such conditions.'' This precise question was recently before the St. Louis Court of Appeals in Wilson v. Torchon Lace & Mercantile Co., 167 Mo. App. 305, 149 S. W. 1156, and that court refused to enforce just such a contract as is here relied on.

The result is the plaintiff is entitled to recover under the conceded facts and hte judgment of the trial court is reversed. If plaintiff is willing to accept judgment for $100 on each count, and will so certify to this court within ten days, the cause will be remanded with directions to enter judgment for that amount as of the date of the trial. Otherwise the cause will be remanded for new trial in accordance with this opinion. *Farrington* and *Bradley, JJ.,* concur.