J. H. W. DAVID, Respondent, v. B. L. FRY MANUFACTURING COMPANY, a Corporation, Appellant.

St. Louis Court of Appeals.    Opinion Filed June 7, 1921.

1. **CORPORATIONS: Private: Sale of Original Capital Stock: Agreement to Repurchase Void.** A business corporation cannot make a valid agreement on the sale of and subscription to its original capital stock to repurchase such stock at any time such original purchaser desires to have it do so.

2. ———: ———: **Power to Buy and Sell its own Stock: Exceptions.** Where a corporation buys in its stock for the purpose of saving a debt and with a view of reissuing the same, or under circumstances where the transaction is fair on its face, is not tainted with fraud, and is clearly to the interest of the corporation, the transaction will be upheld, unless prohibited by its charter.

3. ———: ———: ———: ———: **Agreement to Repurchase from Employee: Substitution of Stock by Officers: Cannot Recover as for Money Had and Received.** Where plaintiff entered into a contract with a corporation whereby he was employed upon his purchasing certain shares of stock of the corporation, with the right reserved in plaintiff within six months after the date of his entering such employment to resign and return the stock, whereupon the corporation would repay him the purchase money, and was told by an officer of the corporation to make checks in payment for such stock to him, which he did, and accepted a receipt therefor signed by such officer as an individual and not signed by the corporation, and the certificates he received were in the name of officers indorsed in blank, he was put upon inquiry as to whether or not he was in fact dealing with the corporation and buying treasury stock from it, and *held* in view of the fact that the treasury of the corporation did not receive any of the purchase price paid by plaintiff for the stock the plaintiff could not recover in an action against the corporation as for money had and received, because to permit such recovery would but in effect, be doing by indirection

that which cannot be done directly, namely, permit the defendant corporation to purchase its own stock when, as a result of such purchase, the capital stock of the corporation would be diminished in the amount that the corporation paid therefor.

Appeal from the Circuit Court of the City of St. Louis.—*Hon. Franklin Ferriss*, Judge.

REVERSED.

*Lewis & Rice* for appellant.

(1) The plaintiff can only recover, if at all, on the cause of action set forth in the petition. Perry v. Barnett, 18 Mo. 144; Reed v. Bott, 100 Mo. 62. (2) It was 'error to hold that the receipt by the secretary-treasurer of a corporation of $2500 in payment of twenty-five shares of stock owned by the president and secretary-treasurer as individuals, was a receipt by the corporation. Even if defendant's officers had represented that the corporation owned stock and would buy it back, such representations are not binding on the corporation. 1. Not within real or apparent authority of the officer who purported to make the contract for the corporation. Sears v. Illinois Wesleyan University, 28 Ill. 183; Buffalo Loan Co. v. Medina Gas Co., 162 N. Y. 67; Hardwick Savings Bank v. Drenan, 72 Vermont, 438. 2. Contracts which a corporation has no power to make or perform are absolutely void; while contracts which it may make, but makes illegally or improperly, may be validated by ratification or estoppel. Orpheum Theatre Co. v. Seavey & Flarsheim Co., 197 Mo. App. 661. (3) This was a contract which defendant corporation had no power to perform or make. It is *ultra vires* for a corporation to purchase its own stock which is not treasury stock—and such a contract is therefore void (according to memorandum of court filed with the judgment, stock which plaintiff bought was not treasury stock). Wilson v. Torchon Lace & Mercantile Co., 167 Mo. App. 305; Sexton v. North Mo. Cent. Ry. Co., 194 S. W. 1081; Stringfellow v. Rosebrough Monument Co., 196 S. W. 1050; St. Louis Rawhide Co. v. Hill, 72 Mo.

App. 142. Any agreement by a corporation to purchase its own stock which would reduce the capital stock of the, corporation, is *ultra vires* under sec. 10159, R. S. 1919—which statutory provision, according to Wilson v. Torchon Lace & Mercantile Co., supra, provides the exclusive method of reducing the capital stock of a Missouri corporation. See, also, St. Louis etc. v. Hilbert, 24 Mo. App. 338. And these cases hold that a purchase of its own capital stock by the corporation reduces the capital stock of the corporation. (5) Even if the stock which plaintiff bought had been treasury stock, it is *ultra vires* for a Missouri corporation to purchase its own treasury stock—the prohibition against the power of a corporation to purchase its own shares is general and emphatic, and no Missouri law or case where the point has been at issue has declared that a corporation has authority to purchase its treasury stock. Hunter v. Garanflo, 246 Mo. 131; Interstate Grocer Co. v. Taylor, 200 Mo. App. 207; Shawhan v. Shawhan Distilling Co., 195 Mo. App. 445; Banking Co. v. Manufacturing Co., 168 Mo. 645; Boley v. Sonora Development Co., 126 Mo. App. 116; Gill v. Balis, 72 Mo. 424; St. Louis Rawhide Co. v. Hill, 72 Mo. App. 142; St. Louis Carriage Co. v. Hilbert, 24 Mo. App. 338; Coppin v. Greenliss, 38 Ohio State 275. (6) Plaintiff was allowed to recover under the third count of his second amended petition on the theory of money had and received. This was error; for even if defendant had received the money of the plaintiff in payment for stock —of which there was not proof—and even though defendant's officers had made the representations imputed to them, and plaintiff had had a right to rely thereon, this could not change the law in Missouri so as to allow a corporation to purchase its own shares of stock. A contract which a corporation has no power to make or perform is absolutely void. Orpheum Theatre Co. v. Seavy & Flarsheim Co., 197 Mo. App. 661, and cases under 5, supra. (7) It was error to refuse the declaration of law No. 1, requested by defendant, to-wit: The court declares that the laws and decisions of the State of Missouri porhibit the repurshase by a corporation of any part of

its captial stock unless the repurchase be made to save the corporation from a financial loss. Wilson v. Torchon Lace & Mercantile Co., 167 Mo. App. 305 (8) It was error to refuse the derclaration of law No.·2, requested by defendant, to-wit: The court declares that under the laws and decisions of the State of Missouri, a contract of a corporaton to repurchase its stock is *ultra vires* and void. Wilson v. Torchon Lace & Mercantile Co., 167 Mo. App. 305. (9) It was error to refuse the declaration of law No. 5, requested by defendant. Sears v. Illinois Wesleyan U., 28 Ill. 183; See cases under point (2), above, (10) It was error to refuse the declarations of law No. 6, requested by defendant. Tripp v. New Metallic Packing Co., 137 Mass. 499. (11) Even if it is held that the contract sued on (as reformed) was within the apparent authority of the officers who purported to excute it for the corporation, the facts that purchaser was requested to make his checks payable to an officer of the corporation in his individual capacity, and that the purchaser received stock certificates belonging to and endorsed by the individual owners thereof, are sufficient to put the plaintiff on notice that the stock did not belong to the corporation. The corporation is not liable for acts within the apparent authority of its officer or agent where the person dealing with the officer or agent has notice of facts sufficient to put him upon inquiry as to the latter's authority. In such a case, if he acts without inquiry, he acts at his peril. In re Lance Lumber Co., 224 Fed. 598.

*O. J. Mudd* for respondent.

(1) The signing of the contract by the secretary-treasurer, at the direction and "under the eye" of the president, is equivalent to a signature by the president himself. 13 Corpus Juris, page 307, sec. 130; Start v. Newspaper Asso., 222 S. W. 871. (2) Under the law of the land, a corporation may have and own shares of its capital stock in such manner as enables it to validly enter into a binding contract for a conditional sale of the stock. 10 Cyc, page 416; 4 Thompson on Corp. (2

Ed. 1908), sec. 4080; Idem, secs. 4082-4087; 1 Cook on Corp. (1913), sec. 311, pages 892-3; Straight v. Steel & Iron Co., 148 Wis. 254; Lyons v. Snyder, 136 Minn. 252; Fleitman & Co. v. Cotton Mills, 186 Fed. 466; 2 Fletcher's Cyc. on Corp., sec. 604; 14 Corpus Juris, page 407, sec. 553; Idem, page 575, sec. 858; Sherman v. Shaughnessy, 148 Mo App. 679; Pallais du Costume Co. v. Beach, 163 Mo. App. 499; Wilson v. Torchon, etc., Co., 167 Mo. App. 305. Both Fry and St. Clair, by their conduct in making the contract in evidence, for and in the name of defendant, and by the recitals in that contract, are estopped to say that the stock, whose certificates they delivered to plaintiff, belonged to them as individuals. 21 Corpus Juris, pages 1156-7, sec. 158; Idem, page 1168, sec. 173, (4) The defendant corporation, having recited in the contract by which it employed plaintiff as assistant superintendent to manage its factory, that plaintiff "hereby does purchase from said second party" (second party being defendant), and by the attendant conduct of its managing officers, is estopped to deny its ownership of the stock. 21 Corpus Juris, page 1060, sec. 2; Idem, page 1011, secs. 110-114; Smith v. Railway Co., 74 Mo. App. 48. (5) Even if the contract were *ultra vires,* defendant having gotten plaintiff's money through the contract, and under the circumstances in evidence, must answer as for money had and received. Bank v. Lyons, 220 Mo. 538; Williams v. Everett, 200 S. W. 1045; Brown v. Railroad, 187 Mo. App. 104 (cases cited); Barree v. City of Cape Girardeau, 197 Mo. 382; Fensky v. Casualty Co., 264 Mo. 154; Alexander v. Relfe, 74 Mo. 495, Sherman v. Com. Prtg. Co., 29 Mo. App. 4. (6) If defendant's officers, after receiving plaintiff's money under his contract with the defendant, misapplied it, that fact, under the circumstances in evidence, may not bind the plaintiff. Donnell v. Bank, 80 Mo. 165.

BECKER, J.—Plaintiff's petition is in three counts. The first count states a cause in equity, its object being the reformation of the contract on which the

action is based, which contract in effect was the employment of the plaintiff by the defendant as assistant superintendent of its factory, upon consideration of the plaintiff purchasing twenty-five shares of the capital stock of the defendant company for the price of $2500. Plaintiff alleged that the written agreement entered into omitted by mutual mistake of the parties, one of the terms agreed upon to the effect that plaintiff at his option, within the first six months of his employment under the agreement, was to have the right to resign his position as assistant superintendent, return the twenty-five shares of stock, and receive back his purchase money.

Upon the hearing of the case a decree resulted which reformed the said contract as prayed in plaintiff's first count. The action of the learned trial court in this regard is not questioned here.

Plaintiff's second and third counts in fact set up but one cause of action at law in two counts. By the second count plaintiff seeks to enforce the contract as reformed, alleging that plaintiff had within six months after he had entered the employment of the defendant under the said written contract, resigned his position, tendered back his twenty-five shares of stock to the defendant, and requested the return of the purchase money, which defendant however refused to do.

The third count seeks to recover of the defendant the money paid by the plaintiff as the purchase price of the stock, as for money had and received, and without enforcement of the contract, as a contract, on the theory that the defendant, through its officers, had wrongfully obtained plaintiff's money and should be obliged to repay it.

The judgment entered below, in addition to reforming the contract as prayed in the first count of plaintiff's petition, rendered judgment for the plaintiff on the third count for the sum of $2500 as for money had and received, on condition, however, that the plaintiff "forthwith and before entry of judgment," deliver the

certificate of stock for twenty-five shares, properly endorsed by the plaintiff in blank, to the clerk of the court or to the defendant. Thereupon in due course defendant appeals.

It appears that the defendant company inserted the following advertisement in one of the St. Louis daily newspapers: "Wanted—settled man, capable of filling a position as assistant superintendent in St. Louis manufacturing corporation. Must furnish good local references and must invest at least $2500. . . ."

Plaintiff answered this advertisement and after several conferences with the president and the secretary and treasurer of the defendant company, entered into a written contract with the defendant company whereby he was employed as assistant superintendent, upon his purchasing twenty-five shares of the stock of the company, for which he paid the sum of $2500 (and for the purposes of this case, since no objection thereto is made here, we will consider the said contract as reformed by the judgment) with the right reserved in plaintiff, within six months after the date of his entering such employment, to resign this said position and return the said stock, whereupon the defendant would repay him the said purchase money. It is conceded that plaintiff did so resign and tender back the stock but that defendant refused to repay the purchase money.

The record discloses that the contract in question was signed in the name of the defendant company "by H. A. St. Clair, Secretary and Treasurer," but that St. Clair however signed at the direction of B. L. Fry, the president of the said company.

The said contract was made and executed on the 30th day of July, 1917, on which date, as a part payment, plaintiff gave a check for $1000, payable not to the order of the B. L. Fry Manufacturing Company, but to H. A. St. Clair, and thereafter, on August 9, 1917, gave St. Clair another check in the sum of $1500, also made payable to him. The plaintiff however did not receive a certificate for twenty-five shares of stock on the day the contract was signed but was given a receipt for the $1000

paid by check on that day, the said receipt, instead of being signed in the name of the company, was signed by H. A. St. Clair. Some days later the plaintiff was given four or five certificates aggregating twenty-five shares of the capital stock of the defendant company. Several of the certificates were in the name of B. L. Fry and at least one in the name of H. A. St. Clair. These certificates were duly indorsed in blank. It was perhaps a month later that the plaintiff, upon surrendering these said certificates, obtained one certificate for twenty-five shares of the capital stock of the defendant company made out in his own name.

The defendant company did not receive any of the proceeds of the two checks given by the plaintiff in payment of his stock, and of the stock which plaintiff obtained by the transaction twenty shares were the individual stock of B. L. Fry, who got $2000 in payment therefor, and five shares were the individual stock of St. Clair, who got $500 therefor, out of the proceeds of the checks given by plaintiff as aforesaid. Plaintiff at all times thought he was purchasing stock of and from the defendant company though in fact the stock delivered to plaintiff was not treasury stock of, nor stock owned by the company at all.

While "it is the law generally, and certainly so in this State, that a business corporation cannot make a valid agreement on the sale of and subscription to its original capital stock to repurchase such stock at any time such original purchaser desires to have it do so," Inter-State Grocer Co. v. Taylor, 200 Mo. App. 205, 204 S. W. 408 (see also St. Louis Rawhide Co. v. Hill, 72 Mo. App. 142; Boley v. Sonora Dev. Co., 126 Mo. App. 116, 103 S. W. 975; Wilson v. Mercantile Co., 167 Mo. App. 305, 149 S. W. 1156; Sexton v. Ry. Co., 194 S. W. 1081), yet "it seems that where a corporation buys in its stock for the purpose of saving a debt and with a view of re-issueing the same, or under circumstances where the transaction is fair on its face, is not tainted with fraud and is clearly to the interest of the corporation, the transaction

will be upheld, unless prohibited by its charter. [2 Thompson on Corporations, secs. 2062, 2068 and 2069, and cases cited in note 2; Chitland v. Ins. Co., 86 Ill. 220; Eggman v. Blanke, 40 Mo. App. 318 (under laws of Illinois); 1 Morawetz on Private Corporations, secs. 114 and 434.]'' [St. Louis Rawhide Co. v. Hill, supra.]

One of the principal reasons underlying the general rule that a corporation cannot buy its own stock is that ''if the incorporators or stockholders be allowed, as soon as incorporation was completed, to sell out their stock to the company, and thereby escape liability for unpaid subscriptions, or in case the stock was fully paid, to receive back from the company the amount paid in, and turn back to the company the stock subscribed, the doors for great fraud upon creditors would be thrown wide open and consequently would not only be disastrous to the creditors but also to the corporations themselves inasmuch as no one would deal with corporations under such conditions.'' [Chrisman-Sawyer Banking Co. v. Independent Wool Mfg. Co., 168 Mo. App. 643, 68 S. W. 1026.]

And this court, in an opinion by ROMBAUR, J., holding that a corporation has no power to repurchase its own stock, said: ''It is not simply a question between the State and the corporation, or between the corporation and its creditors, as the defendant assumes, but a question affecting the validity of the contract itself.''

Section 937, Revised Statutes (now section 10159, R. S. of Mo. 1919) prescribes in what manner manufacturing and business corporations may diminish their capital stock and the method therein prescribed is a limitation of the power to diminish it in any other way. . . .'' [St. Louis Carriage Mfg. Co. v. Bilbert, 24 Mo. App. 338.]

According to the record before us there are several circumstances which should have put plaintiff upon inquiry. One of these was that when plaintiff asked St. Clair in whose name plaintiff should make out the checks in payment of the stock, he was told that if he ''made

David v. Fry Mfg. Co.

them out in his (St. Clair's) name, it would be more convenient'' for him. Plaintiff acquiesced and made the checks payable to St. Clair. Another, that when plaintiff made his first payment by giving St. Clair his check for $1000 he accepted a receipt therefor signed by ''H. S. St. Clair'' as an individual and not signed by the company.

In our view in light of these facts plaintiff should have been put upon inquiry as to whether or not he was in fact dealing with the corporation and buying treasury stock from it.

Though it clearly appears that the treasury of the defendant company did not in fact receive a single dollar of the purchase price paid by plaintiff for the stock, the learned trial court below permitted plaintiff to recover against the defendant as for money had and received. We do not, however, agree with the learned trial judge that the defendant should in equity and good conscience be made to repay the plaintiff the $2500 he paid for his twenty-five shares of the capital stock of the defendant company. To permit plaintiff to recover as for money had and received would but in effect (under the facts and circumstances here shown) be doing by indirection that which the courts have clearly held cannot be done directly, namely, permit the defendant corporation to purchase its own stock when as a result of such purchase the capital stock of the corporation would be diminished in the amount that the corporation paid therefor. Whatever rights or recourse plaintiff may have as against St. Clair or Fry as individuals is a matter not before us.

The judgment for plaintiff on his third count should be and the same is hereby reversed. *Allen, P. J.,* and *Daues, J.,* concur.