MARY F. SHAWHAN, Executrix of the Last Will and Testament of GEORGE H. SHAWHAN, Deceased, Respondent, v. SHAWHAN DISTILLERY COMPANY, a Corporation, Appellant.

Kansas City Court of Appeals, December 29, 1916.

1. **BILLS AND NOTES: Collateral Agreement: Consideration.** The plaintiff, who is the executrix of estate of George H. Shawhan deceased, sued the defendant on a promissory note, executed by defendant corporation for the sum of $5000. The note contained a collateral agreement, which recites the pledge of 50 shares of defendant's capital stock as collateral security, but without stating the numbers of the shares or other means of identification. The defense is the lack of consideration, and the court submitted to the jury the issue of whether or not the note was given by defendant for the purchase of its own stock. The jury decided the issues, in favor of plaintiff. *Held*, the failure of defendant to produce documentary evidence, which should have been extant and in its possession to show with precision the nature of the consideration of the note in suit, leaves the evidence on that issue in a state affording support to contradictory inferences and, therefore as presenting issues of fact for the jury to determine. Therefore the court did not err in refusing to direct a verdict for defendant.

2. ———: Imparting Consideration: Pleading. The note in controversy imported a valid consideration and as its execution was admitted, by an unverified answer, a prima-facie case was made out by its introduction in evidence and the burden then devolved on the defendant to prove its affirmative defense of no consideration.

3. **CORPORATIONS: Trafficking in its Own Stock.** To enforce a sound public policy, and out of no consideration for recreant corporations, courts steadfastly refuse to enforce any obligation a business corporation may attempt to incur in trafficking in its own stock.

4. ————: **Spoliation of Documentary Evidence.** The spoliation by a party of documentary evidence which may, or may not, be valuable to his antagonist, has always received the strongest judicial condemnation and the rule of the ancient maxim that all things are presumed against the spoliator has always been applied with the utmost rigor and sternness.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn,* Judge.

Reversed and remanded.

*Warner, Dean, McLeod & Langworthy* for appellant.

*George W. Day* and *U. S. Weary* for respondent.

JOHNSON, J.—Plaintiff, as executrix of the last will and testament of her husband, George H. Shawhan, deceased, began this suit February 16, 1914, against defendant, the Shawhan Distillery Company, a Missouri corporation, upon a promissory note dated January 31, 1912, due two years after date for $5000, with interest from date and payable to the order of the said Shawhan. The note contains a collateral agreement which recites the pledge of "fifty shares of Shawhan stock" (meaning defendant's capital stock) as collateral security, without stating the numbers of the certificates or other means of precise identification. The answer is not verified and, therefore, the execution of the note is not in issue. The principal defense is no consideration and defendant alleges that the only consideration was the sale by Shawhan to defendant of the fifty shares of stock which the note recites were pledged as collateral. These shares were of the par value of $100 each and were evidenced, it is alleged, by five certificates numbered 126 to 130 inclusive, for twenty shares each which were issued to Shawhan by defendant January 25, 1906. The reply is a general denial. At the close of the evi-

dence, the court submitted to the jury the issue of whether or not the note was given by defendant "in purchase of its own stock from George H. Shawhan" and directed a verdict for defendant if the jury found that such purchase was the consideration. The jury decided this issue for plaintiff, judgment was rendered on the verdict and defendant appealed.

The position of counsel, for defendant is that the evidence shows indisputably that the note was given either in purchase of fifty shares of defendant's capital stock or in discharge and satisfaction of a personal obligation of one Garcelon to purchase such stock and, therefore, was without any valid consideration and its execution was *ultra vires*. Counsel for plaintiff argue that under the pleadings (the answer not being under oath) the only defense properly raised was that of no consideration; that on such issue the introduction of the note in evidence made a prima-facie case; that the burden devolved on defendant to prove the want of a valid consideration, and that since the evidentiary defense rests in part upon the testimony of witnesses, the questions of their credibility and the weight to be accorded their testimony are issues properly referable to the jury, and the trial court was precluded from declaring the defense established in law.

The facts disclosed by the documentary evidence in the record are as follows: The Shawhan Distillery Company was incorporated in 1902, with a capital stock of $50,000 divided into 5000 shares of the par value of $10 each. Shawhan was an incorporator and holder of 500 shares of stock and a director and president of the corporation. In 1904, the capital stock was increased to $250,000 and the par value of shares raised to $100. Shawhan subscribed for $15,000 of the new stock, surrendered his old certificates and received ten new certificates for twenty shares each numbered 126 to 135 inclusive. The minute book shows that he continued as president until January 10, 1911, but the inference is reasonable that he ceased to be the real executive head of the corporation on January 30, 1909, when he

entered into a contract in writing with F. B. Garcelon, another stockholder, for the sale to Garcelon of all his holdings in the corporation. Under the terms of that contract Shawhan sold and indorsed certificates numbered 131 to 135 inclusive for $10,000 of stock and delivered them to defendant. They were then indorsed "void, transferred to F. B. Garcelon" and pasted to their stubs in defendant's stock book. As to the remainder of Shawhan's stock evidenced by certificates 126 to 130, the contract between him and Garcelon provided for the deposit of these certificates *in escrow* which the Commerce Trust Company of Kansas City, on the following terms: Within three years of the date of the contract Garcelon was to pay $10,000, with interest to Shawhan and receive the certificates in case certain stated laws against the liquor traffic in Missouri were not enacted. Further a contract provided that if the sale of all the stock was consummated, Shawhan would become bound not to engage in the business of distilling whiskey in Missouri within the next ten years, nor to manufacture or sell any whiskey known as Shawhan whiskey and would become bound to permit defendant to use his name in furtherance of its business interests. On the expiration of three years from the date of that contract, i. e. on January 30, 1912, Shawhan indorsed in writing on the contract: "I hereby acknowledge full settlement and satisfaction of above contract," and on the following day defendant executed and delivered to Shawhan two notes for $5000 each (one the note in suit) which were collateral form notes each reciting the pledge of fifty shares of Shawhan stock. The only stock of defendant he owned at that time was the block of 100 shares evidenced by the five certificates for twenty shares each, numbered 126 to 130 and in the possession of the Commerce Trust Company under the escrow agreement in the contract of 1909. These certificates have remained with the Trust Company to this day and without referring to any oral evidence the conclusion from the documentary evidence from which the above statement of facts has been

drawn is very strong that the defendant was substituted for Garcelon as the purchaser of the block of stock represented by certificates 126 to 130, and that the note in suit and its companion note were given to Shawhan in payment of the purchase price of that stock. This conclusion finds strong support in the testimony of Garcelon and defendant's secretary, and is not contradicted by any oral evidence offered by plaintiff.

Since the note imports a valid consideration and its execution stands admitted by the unverified answer, plaintiff has made out a prima-facie case, and the burden devolves on defendant to prove its affirmative defense of no consideration. It is conceded, as it must be, that if the evidence is sufficient to establish as a conclusion of law that the consideration was the sale to defendant of shares of its own stock, the note is without legal consideration and is void and non-enforceable against defendant. The courts, out of no consideration for the recreant corporation, but to enforce a sound public policy, steadfastly refuse to enforce any obligation a business corporation may attempt to incur in trafficking in its own capital stock. [Hunter v. Garanflo, 246 Mo. 131; Wilson v. Mercantile Co., 167 Mo. App. 305; Banking Co. v. Manufacturing Co., 168 Mo. 634; Gill v. Balis, 72 Mo. 424; Boley v. Development Co., 126 Mo. App. 116; Manufacturing Co. v. Hilbert, 24 Mo. App. 338.]

Notwithstanding the apparent strength of defendant's proof on this issue, we find the evidence as a whole reasonably supports the conclusion that the defense is not indisputably established and, therefore, presents issues of fact for the jury to determine. The oral evidence comes from witnesses who were allied in some way with defendant; Shawhan, the other party, is dead; all of the documentary evidence having a material bearing on the transactions in question is not before us. The secretary admitted, on cross-examination, that all of its journals and ledgers had been sold by defendant to a junk dealer while this suit

was pending, and it appears that pages in the "bills payable" book, or "tickler" which contained entries relating to four or five notes given by defendant to Shawhan on January 31, 1912, had been cut out and destroyed.

That defendant owed Shawhan a large sum of money at that time is evidenced by the admitted fact that three of the notes for $5000 each were given him on account of some indebtedness, the nature and extent of which is not disclosed. If the documentary evidence thus destroyed which, doubtless, contained all of the facts relating to the accounts and pecuniary transactions between Shawhan and defendant, corroborate the documentary evidence preserved and introduced at the trial, it is fair to assume that defendant would not have treated it as old paper and sold it for junk, especially with knowledge that such evidence would be of the highest importance to defendant to show beyond peradventure that the note in suit was wholly unsupported by legal consideration. The spoliation by a party of documentary evidence which may, or may not, be valuable to his antagonist has always received the strongest judicial condemnation, and the rule of the ancient maxim that all things are presumed against the spoliator has always been applied with the utmost rigor and sternness. [Pomeroy v. Benton, 77 Mo. 64.] But aside from this rule, the failure of defendant to produce documentary evidence, which should have been extant and in its possession, to show with precision the nature of the consideration of the note in suit, leaves the evidence on that issue in a state affording support to contradictory inferences and, therefore, as presenting issues of fact for the jury to determine. The court did not err in refusing to direct a verdict for defendant.

The fifth instruction given at the request of plaintiff told the jury "that if you shall find and believe from the evidence that at any time prior to the 30th day of January, 1912, George H. Shawhan and F. B. Garcelon, on their own behalf, and in good faith entered

into a written contract by the terms of which said Garcelon agreed to purchase for himself from said Shawhan 100 shares of the capital stock of the defendant corporation amounting to the par value of ten thousand dollars, and that said Garcelon had agreed to pay therefor the sum of ten thousand dollars on or before the 30th day of January, 1912; that on the said 30th day of January, 1912, the said George H. Shawhan accepted the note in question in part or in full satisfaction of the agreement so entered into between said Shawhan and said Garcelon, and that in consideration thereof said contract was in fact cancelled and satisfied, then your verdict should be for plaintiff.''

This was erroneous and highly prejudicial. We need not pause to consider whether defense of *ultra vires,* attempted to be pleaded in the answer is well pleaded in law, the answer not being under oath; the defense of no consideration was well pleaded and the facts hypostatized in the instruction bore directly on that issue. On the premise that defendant gave and Shawhan accepted the note in suit in satisfaction of Garcelon's obligation to buy shares of defendant's capital stock, the conclusion must necessarily follow that defendant received no valid consideration for the note and was entitled to a verdict under the plea of no consideration, since a transaction of that character could amount to nothing less than an attempted purchase by defendant of its own stock. There is no other error in the record but for that noted the judgment is reversed and the cause remanded.

All concur.

## ON REHEARING.

TRIMBLE, J.—Upon a reconsideration of the above case we are satisfied with the disposition made of it in the foregoing opinion by JOHNSON, J., handed down at the March term. Said opinion is therefore adhered to. All concur.