Edward J. SCHNUCK and Bernice A. Schnuck, Respondents,

v.

Lawrence A. KRIEGSHAUSER, Appellant,

Grace M. Kriegshauser, Laura McCarthy, Inc. and Jane Sweeney, Defendants.

No. 49411.

Supreme Court of Missouri,

Division No. 2.

Oct. 14, 1963.

Raymond F. McNally, Jr., Irene L. Dulin, St. Louis, for appellant.

John D. Flynn, St. Louis, for Edward J. Schnuck and Bernice Schnuck, plaintiffs-re-spondents; Allen D. Churchill, St. Louis, of counsel.

STOCKARD, Commissioner.

In plaintiffs' action to recover damages for fraud the trial court directed a verdict in favor of defendants Laura McCarthy, Inc. and Mrs. Jane Sweeney. The jury returned a verdict in the amount of $21,-986.50 against defendants Lawrence A. Kriegshauser and Grace M. Kriegshauser. However, the trial court subsequently sustained a motion of Grace M. Kriegshauser for judgment in her favor in accord with her motion for a directed verdict. Final judgment in the amount of the verdict was entered only against Lawrence A. Kriegshauser who has appealed therefrom. We deem it advisable to state the facts in some detail.

In March 1958 Mr. and Mrs. Kriegshauser listed their house for sale with Laura McCarthy, Inc., a real estate broker for which Mrs. Jane Sweeney was saleswoman. The house, located at 18 Oak Park, Creve Coeur, St. Louis County, had been constructed in 1954. It was of one-story design with an attic, a basement under part of the house, and what is referred to as a "crawl area" under the remaining portion. Shortly thereafter Mr. Edward J. Schnuck called Mrs. Sweeney and arranged to see the Kriegshauser house. He and his wife made an inspection of the premises, and were "quite impressed." It was, Mr. Schnuck said, "a beautiful home and beautifully furnished," they were "taken with it" and it was in "excellent shape." At the time of this visit Mr. Schnuck noticed a crack in the wall over the door leading from the reception room into the living room. The crack was 18 to 24 inches in length and wide enough that possibly it could have held a toothpick. About three weeks later Mrs. Sweeney again took Mr. Schnuck through the house. The Kriegshausers were not at home on either occasion. On this second visit Mr. Schnuck asked Mrs. Sweeney "to find out what was causing

the crack and if it was caused by a foundation problem." Mrs. Sweeney did ask Mr. Kriegshauser "about this crack," and according to Mr. Schnuck she reported to him that Mr. Kriegshauser had said "that the crack was caused by green lumber in that portion of the wall," and that he, Mr. Schnuck, "could call Mr. Dusard, the architect, if he wanted to ask any further questions." Mr. Schnuck further stated that Mrs. Sweeney "may have said something about lumber shrinkage, but I don't think that would have meant much because to me that's synonymous with green lumber." Mrs. Sweeney testified that Mr. Kriegshauser had told her that the crack was "caused by green lumber or a shrinkage of the lumber," and that she told Mr. Schnuck "about it being green lumber or a shrinkage of lumber and that Mr. Kriegshauser had told me to have him contact a man by the name of Rime Dusard, who was the architect for them on the house." Mr. Kriegshauser testified that he told Mrs. Sweeney that the crack "might be caused by shrinkage of lumber," but that he did not say "green" lumber. Apparently Mr. Kriegshauser made no affirmative representation concerning the condition of the foundation of the house, and he made no affirmative representation that the crack did not result from a "foundation problem." Mr. Schnuck did not contact Mr. Dusard, although he knew who he was, and did nothing further about investigating the cause of the crack. He testified that "as long as it wasn't a foundation problem I wasn't particularly worried about it." A few days later he purchased the property for $69,000. The sale was completed on May 1, 1958, and it was agreed that the Kriegshausers were to retain possession until May 28. On both of the inspections prior to the purchase, Mr. and Mrs. Schnuck had gone over the entire house, including the basement, and no part of the house was "off limits."

About three months after the Kriegshausers moved out of the house, Mr. and Mrs. Schnuck discovered that a series of cracks were starting in the living room, the reception hall, the master bedroom, and the "powder" room. There was also a crack in the wall of the basement and a crack in the stone on the outside of the building. Mr. Schnuck then called Mr. Dusard. There is a dispute in the evidence as to the extent of the examination of the house then made by Mr. Dusard. In any event he made no repairs. In August or September of 1958 Mr. Schnuck contacted a firm of consulting engineers. An inspection of the house was made by Mr. Herrmann and Mr. Zurheide of that firm. They found some cracking in the foundation beneath the master bedroom, and indications of slight cracking along the south foundation walls. In the "crawl area" there was quite a large number of cracks in the foundation, and there were cracks in the walls in the living room and master bedroom. Mr. Herrmann was of the opinion that the cracks in the house were caused by a settling of the foundation in varying degrees, and that the cracks had started in the foundation and had progressed to the living room, "powder" room, and the master bedroom. He recommended that Mr. Schnuck "underpin" those portions of the house found to be settling, and this was done by the installation of fourteen piers under the walls of the house. In addition, steel ties were placed under the floor of the living room. On March 20, 1961, Mr. Herrmann made another inspection of the house, and he found cracks in the northern portion of the living room and in the "powder" room. He also saw some separation between the trim work and the floor in the northeast corner of the living room. It was his opinion that 17 additional piers would be needed to correct the condition.

Evidence concerning repairs made by Mr. Kriegshauser prior to the sale is of importance. The house was completed in 1954. In the spring of 1957 a hairline crack appeared in the partition wall between the reception room and the living room, and there was a crack in the living

room ceiling across from the den on into the living room cornice. When these cracks became larger Mr. Kriegshauser called Mr. Dusard who in turn called in an engineer by the name of Brussell. They inspected the foundation walls and footings but found no failure there. They concluded that the cause of the cracks was the result of shrinkage or slight movement in the lumber in the interior partition ceiling joists of the building. In the ceiling joists they found what they referred to as a "crown" which is a condition found in dried "dimension" lumber, described as any lumber larger than a 2 by 4, and is evidenced by a rise in the center of the board over the two ends. Mr. Dusard placed two or three braces from the rafters down to the joists. In the "crawl area" they found that certain floor joists which had an upward crown when installed had become nearly level or straight. They concluded that there had been a downward motion to cause this condition, and to correct it they installed two piers in the "crawl area" under the partition between the living room and family room. Mr. Dusard also found three or four shrinkage cracks in the concrete blocks under the "crawl area" and he dug to the concrete footings to see whether the cracks were reflected there, and since they were not he concluded that the cause of the cracks was not settlement of the building. After the work in the attic and "crawl area" was completed, it was Mr. Dusard's opinion and he advised Mr. Kriegshauser that the "condition was remedied" and that the house was in perfect condition. Mr. Kriegshauser made no additional payment for this work. Mr. Dusard discussed with Mr. Kriegshauser the cause of the cracks in the partition wall but he did not go into detail. He did tell him that the cause of the cracks "might" have been a lumber shrinkage and movement. Mr. Kriegshauser said he was told that shrinkage of lumber "possibly" was the cause. These were the only cracks that the Kriegshausers saw in the house. After the repair work was completed by Mr. Dusard,

the living room ceiling was replastered and painted. In January or February 1958 the crack in the partition between the reception room and living room reopened. Nothing further was done about it by the Kriegshausers, and this was the crack which Mr. Schnuck saw when he inspected the house. Mr. Herrmann testified that it was his opinion that the cracks he saw in 1958 in the reception area and one crack in the living room ceiling were "reopened" cracks, but there was insufficient identification to indicate that there were any "reopened" cracks other than those which Mr. Kriegshauser said had appeared in 1957 and had been repaired after the bracing work done by Mr. Dusard had been completed.

Apparently respondents made no complaint to appellant about the condition of the house, and the first notice that Mr. Kriegshauser had of the present contentions of respondents was the filing of this suit in February 1959.

Mr. Schnuck testified that he had paid $5,647.26 and incurred an obligation of $388.50 in correcting the defective foundation and making repairs. Mr. Herrmann estimated the cost of the additional piers he believed to be necessary to be $6,450. Mr. William Randall, who qualified as an expert real estate appraiser, testified that in his opinion the cause of cracks in the foundation walls, the plaster walls and ceilings which he observed in January 1961 was "a structural fault of the foundation and the bearing power of the soil upon which the foundation footing stands." He further testified that if the house had been in good condition on May 1, 1958, and the cause of the crack which Mr. Schnuck had observed had been the use of green lumber, the value of the house would have been $69,000, the amount paid by respondents. But, he stated, that assuming that the house had undergone settlement and that extensive cracks had appeared in the walls and ceilings in the places testified to by Mr. Schnuck, and assuming that the cost of the past repairs

and the estimated future work totaled $13,486.50, it was his opinion that the value of the house on May 1, 1958 was $47,013.50, or a difference of $22,986.50. In arriving at this figure he also took into consideration two items totaling $8,500, the first being "loss in marketability" in the amount of $6,500 because a buyer would "not pay as much for a house that has been patched up," and the second being "estimated damages of continuous repairs that must be made in the future" in the amount of $2,000.

By respondents' verdict directing instruction the jury was told that if it found that in viewing the Kriegshauser house plaintiffs noticed a crack in the wall of the entrance hall and inquired of Jane Sweeney "the cause of said crack, and whether there was any foundation condition causing the crack;" that "the cause of the crack was represented to the plaintiffs by defendant Lawrence A. Kriegshauser through Jane Sweeney" to be "from 'green' lumber;" that prior to the time that plaintiffs viewed the house defendant Kriegshausers knew "that numerous cracks had developed in the house and that thereafter defendant Kriegshausers had braces and ties installed in the attic space and concrete piers and wooden posts installed in the crawl area space under the front portion of the house and had the cracks filled and painted over;" that the representation made to plaintiffs "that the crack was caused by 'green' lumber was false and untrue and known by defendant Lawrence A. Kriegshauser to be false and untrue and was made willfully and maliciously and with the intent of deceiving plaintiffs and with the intent of having plaintiffs rely thereon;" that said representation was to a material part of the transaction and that plaintiffs had a right to and did rely on the truth of said representation and were ignorant of the falsity of said representation; that plaintiffs thereafter purchased the house for $69,000; and that as "a direct and proximate cause (sic) of the false representation" plaintiffs were

damaged, then the verdict should be for plaintiffs.

Respondents' measure of damages of instruction was that "* * * if you find for plaintiffs on Count I (sic) you will assess their damages at such sum, if any, as represents the difference between the actual value of said property at the time it was conveyed to plaintiffs considering the condition of the property at that time and what its value would have been if defendant Lawrence A. Kriegshauser's representation had been true, not to exceed $21,986.50." This amount is the precise amount arrived at by Mr. Randall when he took into consideration that there was a "structural fault of the foundation" and that the house had undergone settlement, and when he considered the cost of remedying the foundation defect. The verdict of the jury was in favor of plaintiffs in the amount of $21,986.50.

With this statement of the evidence and respondents' submission of their case to the jury, we should consider briefly the nature of an action for fraud. "Although caveat emptor is the general rule applied to the sale of land," under certain circumstances a charge of fraud may be based on the vendor's false statements and representations in the sale of land, where it appears that such statements and representations were statements or representations of material facts and not mere statements of opinion, and were such that the purchaser not only was entitled to rely upon them, but did rely upon them to his injury. 55 Am.Jur. Vendor and Purchaser § 57. "The elements and essentials of an action for fraud are not in dispute. The rule is stated in 37 C.J.S. Fraud § 3, p. 215 as follows: 'Comprehensively stated, the elements of actionable fraud consist of: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The

hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon.' " Lowther v. Hays, Mo., 225 S.W.2d 708, 713. See also Bayer v. American Mutual Casualty Company, 359 S.W.2d 748, 752; John T. Brown, Inc. v. Weber Implement & Automobile Co., Mo., 260 S.W.2d 751, 755; Lammers v. Greulich, Mo., 262 S.W.2d 861, 864

The crux of this case from respondents' position, as indicated by their pleadings and evidence, is that at the time they purchased the house, unknown to them but known to appellant, it had a foundation problem in that the foundation was settling irregularly, and that appellant fraudulently represented to respondents that such condition did not exist. The existence of the crack in the interior partition wall which Mr. Schnuck observed when he inspected the house, the fact that the crack had previously appeared and repair work had been done, and the fact, according to respondents' contention, that appellant knowingly misrepresented the cause of the crack to have been green lumber, all constituted evidence in support of their theory of the case that a foundation problem known to appellant did in fact exist and that he falsely represented to respondent that it did not. However, the case was not submitted to the jury on this theory. Instead the case was submitted on the theory of a false representation that the crack in the interior wall was caused by the use of green lumber, and upon such finding the jury was directed to return a verdict for respondents without being required to ascertain the actual cause. The jury was not required to find that a foundation problem did in fact exist, or that Mr. Kriegshauser knew of the existence of a foundation problem, or that he falsely represented that no foundation problem existed. It would appear from the verdict directing instruction that respondents abandoned their evidence based upon the theory that there was a fraudulent representation concerning the condition of the foundation. The instruction isolated the evidentiary fact as to the cause of a crack in the interior partition wall, and the jury was instructed that if it found that Mr. Kriegshauser falsely represented the cause to have been the use of green lumber, regardless of the actual cause and without the jury determining that the cause was a defective foundation, the verdict should be for respondents. Then by reason of the measure of damages instruction the jury was authorized to, and in fact did, award damages based on the loss to respondents by reason of a defective foundation. The verdict directing instruction proceeded upon one theory, and the measure of damages instruction proceeded upon another. However, on this appeal appellant does not directly challenge the submission of the case for the reasons above indicated. Instead, he apparently accepts the theory of respondents' verdict directing instruction, except for a minor challenge in which there is no merit, and bases his attack against the instruction on the ground that there was no evidence that the submitted representation concerning the cause of the crack was false or that he knew it was false. Under these circumstances we must rule the case on the issues presented by the parties.

 The evidence supports a finding that Mr. Kriegshauser represented that the cause of the crack was the use of green lumber and that such representation was false. However, there is no direct evidence that at the time Mr. Kriegshauser knew that the representation was false or that he was ignorant of its truthfulness. Such direct evidence as there is on this issue is to the effect that he believed that the crack in the interior wall was the result of lumber shrinkage, which Mr. Schnuck agreed that as far as he was concerned meant the same as the use of green lumber. Respondents contend, and correctly so, that fraud, or any element of fraud, may be established by the proof of facts and circumstances from which fraud, or an element thereof, may be inferred. Glaze v. Glaze, Mo.App., 311 S.

W.2d 575; Burch v. Schmelig, Mo.App., 300 S.W.2d 838. They admit, in effect, that proof of some of the necessary elements of fraud in this case must rest on circumstantial evidence, and they assert that fraud may reasonably be inferred from the following: (1) "That the engineering procedure of placing concrete and wooden piers in the crawl space of the house by defendant's architect, Dusard, was to overcome settling of the house;" (2) "That no man takes such a cavalier attitude toward the expenses of correcting faults in the construction of a house, that he does not learn the cause of the condition, when it requires piering, attic bracing, and patching to hide the results;" and (3) "That defendant did know the cause of his problem; and knew it was not 'green lumber.'" We cannot agree with respondents' contention. The first statement pertains to the issue of the existence of a foundation problem which was not included in the submission to the jury, and the third statement assumes that the issue sought to be inferred was as respondents contend. As to the second statement, the only evidence is that Mr. Kriegshauser paid nothing additional for the repairs to the house except for the plastering and painting, and there is no evidence that at the time of the representation he knew the details of the work done by Mr. Dusard. He only knew, according to the evidence, that without additional cost to him Mr. Dusard had caused certain bracing to be done to remedy a crack in an interior wall which, according to Mr. Dusard, might have been caused by lumber shrinkage and movement. We find no evidence from which it could be inferred that at the time of the representation concerning the cause of the crack appellant knew of a foundation problem, but that really is immaterial because the existence of a foundation problem and a representation concerning it were not issues in the submission to the jury. The question, under the submission, is whether there was evidence from which the jury could find that appellant represented the cause of the crack to have been the use of green lumber when he knew that it was not, and we conclude that there was not such evidence.

Fraud is never presumed but must be established by evidence. Hardwicke v. Hamilton, 121 Mo. 465, 26 S.W. 342; Lowther v. Hays, supra, 225 S.W.2d at p. 713. The difficulty of proving fraud does not dispense with the necessity of making the minimum required proof, Ray County Savings Bank v. Hutton, 224 Mo. 42, 123 S.W. 47; Bayer v. American Mutual Casualty Company, supra, 359 S.W.2d at p. 752, and "'the burden of proof rests upon him who asserts it to make it manifest.'" Lowther v. Hays, supra, 225 S.W.2d at p. 713. Knowledge of the falsity of the representation was as essential to respondents' proof of fraud as any of the other elements, and proof of "each of these elements is essential to a submissible case, and conversely, failure to prove any one of them is fatal to a recovery." Meriwether v. Lumbard, Mo. App., 246 S.W.2d 363; John T. Brown, Inc. v. Weber Implement & Automobile Co., Mo., 260 S.W.2d 751, 755. This case comes clearly within the rule stated in Powers v. Shore, Mo., 248 S.W.2d 1, 6, that "Facts and circumstances which lead only to a suspicion of fraud or facts and circumstances as consistent with honesty and good faith as with fraud are insufficient to make out a case for the jury."

The judgment in this case must be reversed, but in the event of a new trial if respondents are of the opinion that they have been damaged because of a fraudulent representation concerning the condition of the foundation of the house, they must submit such an issue, supported by the evidence, to the jury and have the jury find that appellant fraudulently represented to them that there was no foundation problem when in fact there was and such fact was known to appellant. If they desire to limit their case based on fraud to a false representation concerning the cause of a crack in an interior wall,

then their measure of damages instruction should likewise be so limited, and it should not authorize the recovery of damages for a false representation concerning the condition of the foundation of the house.

The judgment is reversed and the cause remanded.

BARRETT, C., concurs.

PRITCHARD, C., not sitting.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges Concur.