Edward C. KREUTZ, Harold L. Studt
and Frank A. Forst,
Plaintiffs-Respondents,

v.

Ray J. WOLFF and Lester N. Jaffee,
Defendants-Appellants.

No. 37904.

Missouri Court of Appeals,
St. Louis District.

Nov. 29, 1977.

Donald J. Sher, St. Louis, for defendant-appellant Ray J. Wolff.

Ben Boxerman, St. Louis, for defendant-appellant Lester N. Jaffee.

Ziercher, Hocker, Tzinberg, Human & Michenfelder, Robert C. Jones, Clayton, for plaintiffs-respondents.

DONALD L. MASON, Special Judge.

This is an appeal by defendants-appellants Ray J. Wolff and Lester N. Jaffee from a judgment of the circuit court of St. Louis County, Missouri, sustaining plaintiffs-respondents' motion for a directed verdict or in the alternative for a new trial and entering judgment for plaintiffs in the sum of $137,014.71, as claimed to be due on a promissory note. For reversal appellants argue that (1) the trial court erred in sustaining respondents' motion for a directed verdict because there was substantial evidence to support the jury verdict; and (2)

the trial court erred in alternatively granting respondents' motion for a new trial because the uncontradicted evidence of lack of consideration and fraudulent misrepresentation entitled appellants to a directed verdict.

For the reasons discussed below, we reverse the judgment of the trial court sustaining respondents' motion for a directed verdict and affirm the order granting a new trial.

The assertions in opposition to and in support of the post trial orders entered in this jury tried case requires a detailed recitation of the evidence.

In 1967 Roger Development Company, a corporation jointly owned by respondents Frank A. Forst, Harold L. Studt and Edward C. Kruetz, and of which corporation they were officers, purchased a 180 acre tract of land in St. Charles County, Missouri, as the site for a subdivision development. Roger Development Company filed a Declaration of Trust containing restrictions and naming respondents as the first trustees. One of the subdivision restrictions prohibited the construction on any lot any residence of less than 1,200 square feet first floor living area. The subdivision restrictions were subject to amendment with the approval of two-thirds of the record property owners voting at a meeting called by the owners of at least ten percent of the total area of the subdivision.

The initial development of Royal Oaks Subdivision involved only 27 acres at one end of the tract. The property was subdivided into more than 20 lots, each a minimum of one acre in size, and sold subject to the restrictions. The remainder of the property was platted into building lots of three to five acres in size, but not developed. In 1970 this undeveloped part, minus a small section sold to a school, was sold to Sixty-eight Twenty, Inc. Appellant Ray J. Wolff was a stockholder in Sixty-eight Twenty, Inc., and had made several loans to the corporation. Appellant Jaffee was an employee of the corporation. Monroe Wolff, not a party to this action due to lack of service of process, was president of the corporation.

The sale price of the property was $250,000. One thousand dollars was paid as earnest money and $29,000 was paid at closing. The balance of $220,000 was evidenced by a promissory note secured by a deed of trust on the property sold. The sales contract specified that the transaction was contingent upon Sixty-eight Twenty's ability to change the zoning to permit smaller lots and secure FHA and VA approval for financing. In the event that any of the contingencies could not be secured by Sixty-eight Twenty, the contract was to be null and void and the earnest money returned.

Sixty-eight Twenty succeeded in changing the zoning to permit smaller lots (7,500 square feet), but FHA refused approval of the proposed modular home development unless the subdivision restrictions were removed. As submitted, all the floor plans for the proposed modular homes specified first floor living areas of less than 1200 square feet. After hearing of the reason for FHA's refusal to approve the proposed development for financing, respondent Studt assured appellants that he would "take care of the restrictions." The manner in which respondents amended the subdivision restrictions is one of appellants' defenses and the basis of their counterclaims.

Respondents Studt and Forst solicited some of the Royal Oaks homeowners to agree to an amendment of the restrictions, and to this end circulated a document entitled "Amendment to Restrictive Agreement" in the subdivision. In order to induce the homeowners to sign the agreement respondent Forst, or Mrs. Lois Warfield, a friend of Forst's, and at that time a homeowner in the subdivision, represented that the sole purpose of the proposed amendment was to separate the two groups of homeowners for self-government so that the original group of homeowners would not be out-voted in such matters as the selection of future trustees, that the minimum floor area restrictions of 1200 square feet would continue to apply to any further development of the remainder of the tract,

that any homes constructed would be comparable to theirs, and that any lots in the remainder of the tract would be at least one acre in size. The amendment was recorded, but was not presented to nor approved at a meeting of the homeowners as required in the Declaration of Trust nor as declared in the amendment. As a Notary Public, respondent Forst attested the signatures of the various homeowners.

Respondent Studt then informed appellant Jaffee that the restrictions "had been lifted," and the amendment recorded, which appellant Jaffee verified through the St. Paul Title Company. In December of 1970 appellants closed the deal acting on the belief that the restrictions had been legally changed. Appellants (and Sixty-eight Twenty, Inc.) executed, in favor of Roger Development Company, their promissory note for the balance of the purchase price.

Thereafter, preliminary work was done at the development site, including grading, platting the streets, pouring concrete foundations and erecting display modular homes. Appellants also arranged for the hiring of a sales agent and the printing of sales brochures and advertising.

The homeowners in Royal Oaks, alerted by the construction and promotional publicity, bitterly opposed the proposed development of 450 modular homes on small one-fifth acre lots. Local protest groups formed, held meetings and even hired an attorney. A lawsuit was filed in June of 1971 alleging a conspiracy between Roger Development Company and Sixty-eight Twenty, Inc., to change the zoning and subdivision restrictions by means of fraudulent representations. This lawsuit was subsequently dismissed for failure to prosecute. Some homeowners posted signs along the road leading to the development describing the overcrowded conditions of the local schools, the inadequacy of the sewer system and that a lawsuit had been filed to stop the development. The proposed development was also the subject of several local newspaper articles. As a consequence of this neighborhood opposition, local officials refused to grant any additional building

permits and weight limits were posted on an old bridge over which trucks hauling concrete and modular homes had to pass. This effectively prevented further delivery of materials and halted construction. The display homes were not sold and were eventually vandalized.

Respondents acquired the promissory note when Roger Development Company was dissolved and the company's assets were distributed to its stockholders (respondents) in June of 1971. Sixty-eight Twenty, Inc. had made one principal payment of $10,000, reducing the principal owed to $210,000, and one partial interest payment of $2,500. No other payments were made. Respondents foreclosed on the Deed of Trust in August of 1975 and purchased the property at the foreclosure sale for $140,000. This amount was credited against the principal balance on the promissory note, leaving a deficiency of $70,000, for which sum, plus interest and foreclosure expenses, this action was brought. Respondents calculated accrued interest to amount to $66,351.31 and foreclosure expenses in the amount of $663.40, a total deficiency in the sum of $137,014.71.

Appellants pleaded as affirmative defenses lack of consideration and fraud in the inducement and counterclaimed for damages sustained as a result of the fraudulent manner in which respondents amended the subdivision restrictions. The affirmative defense of lack of consideration was not submitted to the jury, by appellants' choice. A jury verdict was returned in favor of appellants on both the deficiency claim and counterclaims. The trial court sustained respondents' post-trial motion for a directed verdict or in the alternative for a new trial, set aside the jury verdicts, entered judgment in favor of respondents in the sum of $137,014.71 and in the alternative granted respondents a new trial on the ground that the verdict was against the weight of the evidence.

 A directed verdict represents a drastic action and should be granted only where "reasonable men in an honest and impartial exercise in their duty could not

differ on a correct disposition of the case. . . . ". *Stogsdill v. General Am. Life Ins. Co.*, 541 S.W.2d 696, 698 (Mo.App.1976). In determining whether the trial court erred in sustaining respondents' motion for a directed verdict appellants are entitled to have all of the evidence "reviewed in a light most favorable to (their) theory of the case with the (respondents') evidence being disregarded except insofar as it aids the (appellants') case, and that the (appellants are) to be afforded the benefit of any and all reasonable inferences to be drawn from the evidence which is not in conflict with (their) theory of the case. . . . " *Russell v. Russell*, 540 S.W.2d 626, 631 (Mo.App.1976); *Wardenburg v. White*, 518 S.W.2d 152, 154 (Mo.App.1975). It is also axiomatic that lack of consideration and fraud in the inducement are affirmative defenses and appellants had the burden of pleading and proof, Rule 55.08, V.A.M.R.; *Vandivort v. Dodds Truck Line, Inc.*, 444 S.W.2d 229, 230–31 (Mo.App.1970) (lack of consideration); *Shephard v. Hunter*, 508 S.W.2d 234 (Mo.App.1974) (fraud).

▮ Respondents' (plaintiffs') action is on a promissory note. Therefore, we must initially examine respondents' status as holders of the promissory note because lack of consideration and fraud in the inducement are not good defenses against a holder in due course, §§ 400.3–305, 400.3–408, RSMo 1969. However, once a defense other than lack of consideration is raised, respondents had the burden of proof that they or Roger Development Company were, in all respects, holders in due course, § 400.3–307(3); RSMo 1969. Respondents did not present any evidence on their status as holders in due course. Furthermore, because respondents allegedly participated in the fraudulent representations it is unlikely that respondents, in fact, purchased the note in "good faith" and "without notice of any defense . . . on the part of any person," which are prerequisites to the status of holder in due course, §§ 400.3–202, 400.3–304, 400.1–201(25), RSMo 1969; *Mid-Continent Nat. Bank v. Bank of Independence*, 523 S.W.2d 569, 573 (Mo.App.1975). A holder who is not a holder in due course has

much narrower rights and takes the instrument subject to all defenses of any party which would be available in an action on a simple contract, specifically including the defenses of want or failure of consideration, §§ 400.3–306(b) and (c), 400.3–408, RSMo 1969.

▮ Where the execution, delivery and nonpayment of a promissory note have been admitted and the note offered into evidence, a prima facie case has been made in favor of the holders of the note, and in the absence of any substantial evidence of any affirmative defenses the trial court should direct a verdict in favor of the holders, *Latta v. Robinson Erection Co.*, 363 Mo. 47, 248 S.W.2d 569, 577–78 (Mo. banc 1952); *Vandivort v. Dodds Truck Line, Inc.*, supra. Appellants admitted execution of the promissory note at issue and acknowledged their signatures below the caption, "The following makers in their individual capacity." Appellants argue that they signed the note gratuitously and without consideration, that they personally received no benefit as a result and that Roger Development Company suffered no additional detriment, being already obligated by the sale contract to deliver a general warranty deed to Sixty-eight Twenty, Inc., citing *Glassbrenner v. Morgan*, 296 S.W. 201 (Mo.App.1927).

In *German-American Bank v. Camery*, 189 Mo.App. 542, 176 S.W. 1076 (1915) where the evidence did not conclusively show that the defendant in an action on a promissory note had received consideration, the court held that the question of the defense of lack of consideration was sufficient to go to the jury. In *Shawhan v. Shawhan Distillery Co.*, 195 Mo.App. 445, 197 S.W. 369 (1916), cert. quashed, *State ex rel. Shawhan v. Ellison*, 273 Mo. 218, 200 S.W. 1042 (1918), despite the apparent strength of the defendant's proof of lack of consideration in an action on a promissory note, the court found that the defense had not been indisputably established and therefore presented issues of fact for the jury. See also *Lambert v. Gutman*, 156 S.W.2d 32 (Mo.App.1941); *Federal Chemical Co. v.*

*Hitt,* 155 S.W.2d 899 (Mo.App.1941); *Mut. Bank & Trust Co. v. Stout,* 231 S.W.2d 274 (Mo.App.1950).

█ In this case the note imported consideration, § 431.020, V.A.M.S. 1949, *Shawhan v. Shawhan Distillery Company,* supra, and the sales contract discloses the appellants' signatures as makers were not required. These documents, both received in evidence, created a dispute as to the issue of consideration which was not clarified or resolved by the oral testimony. Contrary to *Glassbrenner v. Morgan,* supra, neither party exclusively resolved this dispute and, therefore, the issue was for the jury. The trial court erred in sustaining respondents' after-trial motion for a directed verdict and entering judgment for respondents.

In support of the trial court's action in setting aside appellants' verdict on the petition and on the counterclaim the respondents categorically assert that appellants failed to plea the materiality of the representation, the appellants' right to rely on the representation, the appellants' ignorance of the falsity of the representation, and question whether appellants pleaded respondents' intent that the representation be acted upon, and appellants' reliance on that representation.

█ In *Latta v. Robinson Erection Company,* supra, it is stated:

"The essential elements necessary to constitute actionable fraud are the same, whether it is used by way of defense or as a cause of action. 37 C.J.S. Fraud § 4, p. 219. These essential elements are 'that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury and damage.' 23 Am.Jur. 773, Fraud and Deceit, Sec. 20. And see *Dolan v. Rabenberg,* 360 Mo. 858, 231 S.W.2d 150, 154; *Powers v. Shore,* Mo. Sup., 248 S.W.2d 1, not yet reported in the State Reports; *Lowther v. Hays,* Mo.

Sup., 225 S.W.2d 708, 713. . . ." (loc.cit. at 576)

See also *Ackmann v. Keeney-Toelle Real Estate Co.,* 401 S.W.2d 483 (Mo. banc 1966); *Bayer v. American Mut. Cas. Co.,* 359 S.W.2d 748 (Mo.1962); *Yeager v. Wittels,* 517 S.W.2d 457 (Mo.App.1974). Each of these essential elements must also be pleaded, although no express form of words is necessary to set out the various elements which constitute fraud if the substantive facts are alleged, *Weitzman v. Weitzman,* 156 S.W.2d 906 (Mo.1942).

█ " . . . Ignoring the imperfections and uncertainties of the (answer and counterclaim) and according its allegations with every reasonable and fair intendment, . . . " *Gerber v. Schutte Inv. Co.,* 354 Mo. 1246, 194 S.W.2d 25, 29 (Mo. 1946) cited in *Bedell v. Daugherty,* 362 Mo. 598, 242 S.W.2d 572, 574 (1951), we believe the appellants did plead, or prove without objection, each element of fraud. Pleaded were the representations to both appellants and the homeowners, and the materiality of those representations, that the representations were false and known to be false, that the representations were made with the intent to deceive, that appellants were deceived, that appellants relied on the representations made to them, to their damage. Although appellants' pleadings did not allege their right to rely on respondents' representation, an examination of the transcript discloses proof of that essential element which was received in evidence without objection. In this circumstance the petition is treated as having been amended to conform with the evidence, *Galemore Motor Co., Inc. v. State Farm Mut. Auto Ins. Co.,* 513 S.W.2d 161 (Mo.App.1974); Rule 55.33(b), V.A.M.R.

Respondents also aver that appellants pleaded only the representations made to the homeowners which cannot be the foundation for their affirmative defense and counterclaim. As mentioned, respondents did plead the representation, as made to the respondents, that the amendment to the restrictions had been effected and also generally pleaded the representations made to

the homeowners so as to obtain their signatures on the amendment. Although our Supreme Court held in *Bedell v. Daugherty*, supra, that a cause of action for fraud could be predicated on false representations made to a plaintiff and a third party, we do not believe that respondents' representations to the third party homeowners alone are the basis of appellants' defense and cause of action on the counterclaim. In reality, the representations made to the homeowners, to secure their signatures on the amendment, was only the vehicle used by respondents to achieve the fraud perpetrated on the appellants, i. e., the improper amendment to the restrictions.

 Respondents also assert the appellants did not prove each of the essential elements of fraud and, therefore, the trial court did not err in setting aside appellants' (defendants') verdict on the petition and on the counterclaim. Without question, the existence of fraud is never presumed and must be proven in each of its essential elements by the party asserting the fraud whether as the basis of a claim, defense or counterclaim, *Gibson v. Smith*, 422 S.W.2d 321 (Mo.1968); *Yerington v. Riss*, 374 S.W.2d 52 (Mo.1964); *Williams v. Miller Pontiac Co.*, 409 S.W.2d 275 (Mo.App.1966). Failure to prove any one of the essential elements is fatal to recovery, *Schnuck v. Kriegshauser*, 371 S.W.2d 242, 248 (Mo. 1963); *Strothcamp v. Sandy Ford Ranch, Inc.*, 440 S.W.2d 193 (Mo.App.1969). In determining whether appellants have made a submissible case and, therefore, whether the trial court erred in sustaining respondents' motion for a directed verdict, the evidence presented must be viewed in the light most favorable to appellants giving them the benefit of all reasonable inferences to be drawn therefrom, *Ackmann v. Keeney-Toelle Real Estate Co.*, supra, l. c. 488; *Wilson v. Murch*, 354 S.W.2d 332, 337 (Mo. App.1962).

Appellants' evidence showed that respondents told appellants that the restrictions had been changed. This statement was material and was known to be untrue as the signatures of the homeowners had been obtained by false representations and the amendment had not been changed in accordance with the terms of the subdivision restrictions. Respondents clearly told appellants of the amendment with the intent that appellants rely upon the statement. Appellants did so rely in a manner reasonably contemplated and consummated the transaction believing the change had been legitimately made. The only purpose in representing that the restrictions had been amended was to satisfy the sale agreement condition of Sixty-eight Twenty, Inc., obtaining FHA and VA financing, *Strothcamp v. Sandy Ford Ranch, Inc.*, supra, l. c. 196.

 Appellants did verify the change through a title company, but only to the extent of verifying the recording of the amendment, not the legitimacy of that amendment. The fraudulent nature of the amendment became apparent later. In general, where a party makes his own independent investigation, he will be presumed to have been guided by what he learned and the conclusions he reached; and he may not then say that he relied on the misrepresentations of another, *Dolgin v. Potter Elec. Signal Co.*, 536 S.W.2d 61 (Mo.App.1976); *Consumers Co-op Ass'n v. McMahan*, 393 S.W.2d 552 (Mo.1965); *Bayer v. American Mut. Cas. Co.*, 359 S.W.2d 748 (Mo.1962). This rule has been qualified where a distinct and specific representation has been made to be acted upon or for the purpose of inducing action and has induced action, *Tietjens v. General Motors Corp.*, 418 S.W.2d 75 (Mo.1967); *Universal C.I.T. Credit Corp. v. Tatro*, 416 S.W.2d 696 (Mo.App.1967). In *Tatro* the court held that the borrower's distinct and positive representation that the purported signatures were those of his wife established reliance when the signatures were a condition of the loan despite the alleged negligence of the loan company in failing to compare account signature cards.

These facts and circumstances are not as "consistent with honesty and good faith as with fraud, . . ." *Schnuck v. Kriegshauser*, supra, from *Powers v. Shore*, 248 S.W.2d 1, 6 (Mo. banc 1952); *Yerington v.*

*Riss*, supra. Appellants presented substantial evidence from which the jury could have found each of the essential elements of fraud. The evidence adduced presented a jury issue on both this affirmative defense and the counterclaim, and the court erred in directing a verdict against respondents.

■ Appellants urge that the trial court abused its discretion in granting respondents' alternative motion for a new trial on the ground that the verdict was against the weight of the evidence as appellants were entitled to a directed verdict on the petition and counterclaim. Our earlier comments belie this assertion. The trial court has broad discretionary power to grant one new trial on the ground that the verdict is against the weight of the evidence, Rule 78.01, V.A.M.R.; *State ex rel. State Highway Comm'n v. Klipsch*, 414 S.W.2d 783 (Mo.1967); *Liberty Loan Asso. of Antioch v. Brown*, 493 S.W.2d 664 (Mo. App.1973). Such an order is presumptively correct and reviewing courts are liberal in sustaining an order granting a new trial. *Phillips v. Phillips*, 443 S.W.2d 144 (Mo. 1969); *Land Clearance for Redevelopment Authority v. Joplin Union Depot Co.*, 429 S.W.2d 806 (Mo.App.1968). An order granting a new trial on the ground that the verdict was against the weight of the evidence is arbitrary and an abuse of discretion when the benefitting party fails to make a submissible case, *Friedman v. Brandes*, 439 S.W.2d 490 (Mo.1969); *Overbey v. Fodde*, 420 S.W.2d 510 (Mo.1967); *Williams v. Cass*, 372 S.W.2d 156 (Mo.App. 1963). Where the trial court sets aside the verdict and judgment and grants a new trial on the ground that the verdict was against the weight of the evidence and there is substantial evidence to support a verdict for the benefitting party, the order of the trial court cannot be held to be an abuse of discretion, *Cunningham v. Bellerive Hotel, Inc.*, 490 S.W.2d 104 (Mo.1973); *Cragin v. Lobbey*, 537 S.W.2d 193 (Mo.App. 1976); *Williams v. Cass*, supra. Respondents brought this action for a deficiency owed to them on a promissory note. The promissory note was admitted into evidence; appellants did not deny execution or delivery of the note or that the note was unpaid. This was sufficient to make a submissible case for respondents, *Sloan v. Paris*, 541 S.W.2d 316, 320 (Mo.App.1976) (post-UCC case); *Vandivort v. Dodds Truck Line, Inc.*, supra (pre-UCC case); *Fitzgibbon Discount Corp. v. Hatchett*, 427 S.W.2d 786 (Mo.App.1968) (pre-UCC case).

■ Respondents also assert in support of the trial court's order granting a new trial that certain errors had been made in the instructions given to the jury. It is unnecessary, however, to determine whether the instructions were erroneous and justified granting a new trial, *Jefferson County Bank & Trust Co. v. Dennis*, 523 S.W.2d 165 (Mo.App.1975), in view of our conclusion that the trial court did not abuse its discretion in granting a new trial on the ground that the verdict was against the weight of the evidence. If any ground in a motion for a new trial sustained by the trial court is well taken, the trial court's action in granting the motion is to be affirmed, *Bertram v. Wunning*, 417 S.W.2d 120 (Mo. App.1964); see also *Laclede Inv. Corp. v. Kaiser*, 541 S.W.2d 330 (Mo.App.1976); *Douglass v. Missouri Cafeteria, Inc.*, 532 S.W.2d 811 (Mo.App.1975). On retrial appellants will have the opportunity to examine the sufficiency and correctness of their verdict-directing instructions.

Our disposition of this case makes it unnecessary to comment on, or rule on, the remaining assertions of the parties.

Accordingly, judgment is reversed and cause remanded for new trial.

SIMEONE, C. J., and STEWART, J., concur.

DOWD, J., not participating.