**Leo M. MULLEN, Plaintiff,**

v.

**Jon L. STARR, et al., Defendants.**

**No. 79–0454–CV–W–8.**

United States District Court, W. D. Missouri, W. D.

April 23, 1982.

---

Leo M. Mullen, M.D., plaintiff pro se.

Steve Robey, Robey & Dauer, Providence, Ky., James F. Stigall, Alexander & Stigall, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

STEVENS, District Judge.

There is before the court another journey in the seemingly unending odyssey of Dr. Leo Mullen through the courts of Western Missouri. This action, the tenth civil action revealed by the available records to have been filed by Dr. Mullen in this court and the ninth in three years, seeks the recovery of $946,540.00 as compensatory and punitive damages from two individuals and an association, all unidentified in the body of the complaint, for miscellaneous civil wrongs, the conventional characterization of which is defied by the four corners of the complaint.

Certain words are used in one part or another of the complaint which might justify a "fraud" or "conspiracy to defraud" label: "conspiracy" (par. 1); "wrongfully and maliciously" (par. 3); "agent or co-conspirator" (par. 5); "scheme and conspiracy to defraud" (par. 9); "premeditated, wanton and willful malicious act" (par. 10); "fraudulent acts" (par. 10); "exemplary and punitive damages" (par. 10); "fraudulent and scheming acts" (prayer), all of which are apparently designed to invoke a conclusion that plaintiff is entitled to relief on some unspecified theory or the other.

The difficulty is that this complaint language is all conclusory and is not substantiated by or based on any factual allegations. It is now clear, after considerable jousting by the parties on paper and three depositions for which plaintiff received due notice but which he chose not to attend, that the complaint is conclusory only and frames no fact issues because there are none to frame. For this reason, defendants' motion for summary judgment will be sustained.

There are several features of this matter which bear analysis. First, plaintiff filed his complaint *pro se.* Under normal circumstances this would call forth a whole panoply of protective devices designed to shepherd the unprofessional litigant through the maze of rules and procedures usually attendant upon well-tried litigation. It should be said here that those "rules and procedures" are not designed as traps for the unwary nor as the *raison d'être* for the legal profession, but are rather garnered from years of experience and aimed at the orderly, predictable, and consistent resolution of disputes between people. Nevertheless, the bars are often lowered when a party appears *pro se.*

■ Despite the obvious advantage to a litigant of the professional help and guidance of one versed in the law, "[i]n all courts of the United States the parties may plead and conduct their own cases personally." . . . 28 U.S.C.S. § 1654 (Law. Co-op. 1977). In point of fact, as already implied, the courts are considerably less demanding of a *pro se* litigant than of one represented by counsel. The court alluded to this practice in *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), when it said:

> We cannot say with assurance that under the allegations of the *pro se* complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

404 U.S. at 520–21, 92 S.Ct. at 595 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957)).

■ Some rules do apply, however, and one of them is that the court must grant summary judgment pursuant to Rule 56, Fed.R.Civ.P., if it is clear from the record before it that it would have to direct a verdict for the movant at an appropriate time during a trial. That rule is referred to by the court in *Weber v. Towner County*, 565 F.2d 1001 (8th Cir. 1977):

> A court is justified in granting a summary judgment if, after viewing the evidence in the light most favorable to the party opposing the motion and giving that party the benefit of all inferences reasonably deducible, the court is convinced that, upon a trial of the case to a jury, a verdict in favor of the moving party would have to be granted.

565 F.2d at 1006 (quoting *Bellflower v. Pennise*, 548 F.2d 776 (8th Cir. 1977)). Applying that test to this case it is clear to the court that the movant here must prevail. This conclusion dictates a review of the facts as they appear in the file in its present form.

■ At some time prior to August 13, 1977, plaintiff completed a form of "Consignor's Contract" and submitted it to defendant Arkansas Breeders' Sales Company in Hot Springs, Arkansas. On it he named seven horses to be offered for sale at auction to be conducted by the defendant association. The form also called for an indication of the horses' color and sex, month, day and year of foal, sire, dam, name of horse bred to, date of last service, whether in foal or barren and an indication of the 1976–1977 production record. This information was provided as appropriate for the horses listed for sale on plaintiff's submission of the Consignor's Contract except that the sex of three foals is not indicated and there is no indication of any breeding history or production record for the first four horses listed. The providing of this detailed information demonstrates to the court that plaintiff gave some considerable attention to the completion of the contract form and did not treat it as a matter of little consequence.

On July 3, 1977, plaintiff sent written instruction to defendant that "Juggler [the first horse listed on the Contract] is to have a reserve of $32,000.00. Anything above $32,000.00 bid will be the selling price unless competitive bidding will drive the price higher, and hopefully this will be considerably more than $32,000.00." This instruction, on the letterhead of Leo M. Mullen, M.D., 4443 Paseo Boulevard, Kansas City, Missouri 64110, and signed "Leo M. Mullen, M.D." was admitted by plaintiff to be his written instruction to defendant (Judge Hunter's order of April 24, 1980), and in "answers to interrogatories propoud" (sic), filed about August 31, 1979 (date unclear in style of pleading), the instruction was admitted never to have been revoked prior to the auction sale in August of 1977. Thereafter defendant Starr, d/b/a Arkansas Thoroughbred Association, employed defendant Jones to act as the seller's agent and to bid the horse Juggler up to $31,000.00.

According to the undisputed testimony of Starr, of Bill Wolums, the operator of Pedigree Associates, Inc., and of Linda Corley, sales manager and executive vice president

of Kenington Sales Company of Lexington, Kentucky, all three with years of experience in the sale of thoroughbreds, such induced bidding is a usual and customary procedure in the thoroughbred auction industry in the case of animals on which the owner has put a reserve price. What the sale company is doing, according to Starr and the two named witnesses, is buying back the animal at the auction on the owner's behalf in the hope that there will be a bidder who will out-bid the owner or the owner's agent and thereby purchase the animal for a price equal to or in excess of the reserve price. This was what defendant Starr, d/b/a Arkansas Breeders' Sales Company, undertook to do on August 13, 1977, when he commissioned defendant Jones to bid Juggler in at $31,000.00.

It appears from a copy of an article that appeared in what is characterized by plaintiff as "the local Little Rock paper" in his "Answer of Motion by Defendant Who Alleges Uncomplete [sic] or Evasive Answers to Interrogatory Nos. 4–5–6–7–8, and Answer to The Brief," filed October 10, 1979, that the sale of Juggler for $31,000.00 to L. R. Jones of Oilton, Oklahoma, was reported in the press following the August 13–14, 1977, sale conducted by defendant Starr. This press report apparently must take or substantially share the responsibility for the initiation of these proceedings. There followed a long and prolix series of letters between defendant Starr and plaintiff in which plaintiff alternatively took the positions 1) that he was entitled to $31,-000.00 for Juggler, 2) that Juggler had foundered and he would be satisfied with $5,000, and 3) that he wanted the bid price plus the expenses of maintaining Juggler after the sale (the amount of which, with punitive damages, he claims in this lawsuit).

It is clear from the record as a whole in this case, and taking the admitted and uncontested facts in the light most favorable to plaintiff as the court must do in considering a motion for summary judgment, that there are no contested facts warranting the testing of this case in the crucible of jury trial. Plaintiff clearly sues for breach of contract. The court has already pointed out the use of certain words and phrases apparently designed to invoke the jurisdiction of this court on a theory of fraud or conspiracy, but the pleadings and the facts revealed following the filing of the complaint totally fail to disclose any possible basis for recovery on any theory except breach of contract.

The five classic elements of fraud necessary to establish that cause of action in Arkansas, *Bishop v. Tice*, 622 F.2d 349 (8th Cir. 1980) (and in Missouri, *Kreutz v. Wolff*, 560 S.W.2d 271 (Mo.App.1977)) are neither pleaded nor shown by any development subsequent to the filing of the complaint to be present.

In like manner, the complaint fails to state a right of recovery for conspiracy on any basis. As the Supreme Court of Missouri has said:

The "grounds or gravamen" of an action for civil conspiracy "must be set out with the same certainty and particularity as in an ordinary civil action, against a single defendant only, growing out of tortious conduct of the same general character."

*Royster v. Baker*, 365 S.W.2d 496 (Mo.1963) (cite omitted).

The only complaint plaintiff makes in the final analysis is that he did not get his horse sold and it is clear that such is the case because plaintiff put such a high reserve price on the horse that no one at the auction with live money would bid. These are undisputed facts. Under the provisions of Rule 56, Fed.R.Civ.P., "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Despite the admonition, often stated by appellate courts, that pleadings of one appearing *pro se* should be construed liberally in favor of the pleader, those pleadings still "must set forth the claim in a manner which, taking the pleaded facts as true, states a *claim as a matter of law.*" *Guy v. Swift and Company*, 612 F.2d 383, 385 (8th

Cir. 1980) (cite omitted) (court's emphasis). That constraint on the application of the rule of liberality is made even more telling in this case, where plaintiff has filed nine matters within three years in this court in which he has appeared *pro se*. The court takes notice of the fact that plaintiff has filed seventeen actions *pro se* in the Circuit Court of Jackson County, Missouri, since the 1976 court year and since 1965 has appeared as plaintiff in ten other suits in Circuit Court. Additionally, he has filed untold actions *pro se* in the Associate Circuit Court of Jackson County, Missouri.

This is not to say that plaintiff should be criticized for his apparent litigiousness. Free access to the courts is a keystone of our democratic society. However, rules of interpretation designed to serve the naiveté and lack of legal sophistication of the customary *pro se* pleader do not necessarily apply to him whose favorite hobby at least, if not vocation, must be the writing of pleadings and filing of lawsuits.

For the reasons assigned in this opinion, the motion of defendant for summary judgment is sustained and plaintiff's action herein is dismissed at plaintiff's costs.

IT IS SO ORDERED.